## Miller's Administrator v. Ewing.

(Decided March 9, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

Executors and Administrators—Actions—Pleading—Plene Administravit.—Kentucky Statute 3866, while it does not expressly abolish the plea of "assets fully administered" or take away the right to interpose it, renders the plea absolutely nugatory and ineffectual, and therefore unnecessary, so that a defendant administrator was not prejudiced by the ruling of the trial court sustaining demurrer to such plea. Now, as at common law, the plea could have no effect except to control the form of the judgment, and the form of the judgment is already controlled by the statute, without the making of the plea.

WEHLE & WEHLE for appellant.

EUGENE HUBBARD and ALPHA HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Mary J. Miller, wife of William Miller, died in Louisville on October 29, 1909. For nearly two years prior to her death she had been suffering with a cancer on the right side of her face and head.

Not long after her death William Miller married a second time; and he himself died in July, 1912. The Louisville Trust Company was appointed and qualified as administrator of his estate on August 12, 1912.

On April 3, 1913, Margaret A. Ewing instituted this action in the Jefferson Circuit Court to recover from the estate of William Miller for services claimed to have been rendered by her in nursing and caring for the first wife of intestate under a contract with him. There was a verdict and judgment in the plaintiff's favor in the sum of $480.00; and defendant administrator appeals.

1. The defendant administrator, by answer, traversed the petition; and in the second paragraph thereof set up a plea of "assets fully administered" (*plene administravit*). The court sustained a demurrer to this plea; and of this ruling of the court appellant administrator complains upon this appeal.

At the common law, a plea of "assets fully administered" was required to be interposed by the personal representative when an action was instituted against him upon an obligation of the decedent, because, unless such plea was interposed, the failure to do so was held to be a confession of assets sufficient to discharge the plaintiff's demand; so that when the plaintiff recovered a judgment to be levied of the assets in the hands of the personal representative (*de bonis testatoris*) and execution thereon was returned *nulla bona*, that judgment was conclusive in fixing the personal representative with assets in supplementary proceedings brought either by way of an action of debt on the judgment suggesting a *devastavit* or by way of a special *fieri facias* or *scire fieri* inquiry; and judgment was then taken against the administrator to be levied of his individual assets (*de bonis propriis*). In other words, the failure of the personal representative to interpose a plea of "assets fully administered" in the original action rendered him personally liable for the debt of the decedent sued upon.

If the personal representative did interpose a plea of "assets fully administered" and the plaintiff joined issue thereon, a verdict for the plaintiff on such issue fixed the personal representative with assets as found by the jury; and the judgment rendered to be levied of assets in his hands was conclusive as to the fact and amount thereof.

If the personal representative interposed a plea of "assets fully administered" and the plaintiff confessed the plea, or if the plaintiff joined issue on the plea, and the verdict on that issue was for the defendant, then the judgment was rendered to be levied of future assets

coming to the hands of the personal representative (*quando acciderint*), and such judgment was conclusive as to the want of assets.

If the personal representative interposed a plea of "assets partly administered, leaving not enough on hand to satisfy the demand of the plaintiff" (*plene administravit praeter*) and the plaintiff confessed such plea, or joined issue thereon, and the verdict was for defendant on that issue, then the judgment was rendered to be levied of assets in the hands of the personal representative to the amount so found by the jury, and to be levied of future assets as to the balance, and the judgment was conclusive thereupon.

But, if the personal representative interposed a plea either of "assets fully administered" or of "assets partly administered leaving not enough to satisfy plaintiff's demand," and the plaintiff joined issue on such plea and defeated the personal representative thereon, then the judgment was rendered to be levied of assets in his hands, and was, of course, conclusive in fixing his liability therefor.

The plea of "assets fully administered" was not at common law a defense to the action against a personal representative on an obligation of the decedent, in the sense that, if the plea were sustained, the plaintiff could not recover a judgment. The plea only operated to control the form and effect of the judgment, not to defeat the action.

But the common law rule no longer obtains in this State. It is now provided by statute (Kentucky Statutes, Section 3866) that: "No personal representative shall be liable for more than the amount of the assets which have or may come into his hands to be administered on account of having failed to plead or make defense, or on account of any plea or answer which he may plead or file; but the judgment of the court shall only render him liable for the amount of assets in his hands unadministered."

The effect of this statutory declaration is to abrogate the common law rule that where the personal representative is sued upon an obligation of his intestate and fails to plead "assets fully administered," the judgment against him conclusively fixes him with assets equal to the amount of the demand of the plaintiff. The statute does not expressly abolish the plea of "assets fully ad-

ministered,'' but it does take away the conclusive quality of the judgment as fixing him with assets in actions of the character mentioned where the plea is not interposed; and thereby renders the plea absolutely nugatory and unnecessary.

The only possible effect the plea could have would be to deprive the judgment of the quality of conclusively fixing the administrator with assets; and the statute takes from the judgment that quality, without the plea. Hence, we are unable to see how appellant administrator was prejudiced by the ruling of the trial court in sustaining a demurrer to the plea.

We are not unmindful of the fact that there are a number of cases in which the plea of ''assets fully administered'' has been interposed and recognized as valid; but there is no case in this State in which such plea was ever given greater effect than to control the form and effect of the judgment; there is no case in which the plea ever operated as a complete defense to the action so as to deny to the plaintiff a judgment in some form. The cases mentioned were decided while the Act of January 11, 1811, was in force.

That act, in addition to language substantially the same as the present statute, contained the following provision:

''Provided, however, that if any executor or administrator shall suffer judgment to go against them by default, or shall fail or neglect *to show the real amount of assets in their hands unadministered,* by which judgment shall pass against them for more than the amount of such assets, and shall afterwards, when sued for a *devastavit* on his, her or their bond or otherwise, show that they have not assets sufficient to pay the plaintiff's demand, it shall and may be lawful for the court to adjudge the costs of such second suit to be paid by such defendant or defendants out of his, her or their own proper goods and chattels.'' See Morehead & Brown Statutes, p. 672.

It will thus be seen that while the Act of 1811 took away the conclusive quality of the judgment as fixing the personal representative with assets in cases of the character mentioned when the plea of ''assets fully administered'' or ''partly administered'' was not interposed, still that act contemplated, in order to avoid per-

sonal liability for the costs of supplementary proceedings, a showing by the personal representative and inquiry into the amount of assets in his hands, upon the trial of the original action, judgment to be rendered to be levied of assets in his hands for the amount so found by the jury, and to be levied of future assets for any excess.

But, even under that act, there is no case extending the effect of the plea of "assets fully administered" further than to control the form of the judgment and fixing the personal representative with assets only to the extent so found. Such was the effect given the act in Moore's Admr. v. Tandy, 3 Bibb, 97; McKinley's Ex'r. v. Call's Admr., 1 T. B. M., 54; Jameson's Ex'r. v. Martin, 3 J. J. M., 330, and Markham's Ex'r. v. Allen, 8 B. M., 417, all cited by appellant. See also Rucker v. Waddlington, 5 J. J. M., 238; Burnes v. Burton, 1 A. K. M., 349; Bowman v. Green, 6 T. B. M., 339, and South v. Carr, 7 T. B. M., 419.

On the contrary, in Miller v. Towles, 4 J. J. M., 255, the court expressly held that it was error to dismiss plaintiff's action, even if the assets had been fully administered, for plaintiff was still entitled to a judgment to be levied of future assets (*quando acciderint*) showing conclusively that the plea was not a complete defense, but operated only to control the form of the judgment.

It is true that in some of the cases cited, particularly in McKinley's Ex'r. v. Call's Admr., *supra,* the court indicated that the amount of assets in the hands of the personal representative was material and should be found by the jury so that the court could determine how much of the judgment should be to be levied of assets in the hands of the personal representative and how much should be to be levied of future assets. And this was proper. For, although the plea of "assets fully administered" was interposed under the Act of 1811, not to deprive the judgment of its conclusive quality in fixing the personal representative with assets (for the act itself did that), but to avoid personal liability for the costs of the subsequent proceedings, still, when the plea was in, the verdict and judgment would necessarily be conclusive upon the personal representative in fixing him with assets found in his hands by the jury, and that issue could not be again litigated in the supplementary proceedings.

The difference between the Act of 1811 and the present statute is that, although both of them take away from the judgment in actions of the character mentioned where no plea of *plene administravit* or *plene administravit praeter* was interposed, its conclusive quality as fixing the personal representative with assets, and thus dispensed with the necessity of the plea in order to avoid such conclusive quality thereof, still the former act rendered the plea necessary in order to avoid personal liability for the costs of the subsequent proceedings, whereas the present statute takes away even that result of a failure to interpose the plea, and thereby renders such plea a futile and unavailing measure; the only effect it could possibly have being to avoid the conclusive quality of the judgment, and that quality is taken away by the statute itself.

The omission from the present statute of the provision as to personal liability for costs found in the Act of 1811 manifests an undoubted purpose to take out of actions brought against a personal representative to reduce claims to judgment all questions of the settlement of the estate, and to relegate such matters to the action authorized by Section 428 of the Civil Code of Practice or to actions seeking to enforce the personal liability of the personal representative; and to render the plea of "assets fully administered" not only unnecessary, but also nugatory in original actions against personal representatives upon obligations of the decedent.

2.   It is further contended by appellant administrator that the verdict is contrary to the evidence, and is not supported by sufficient evidence.

A number of witnesses testified that plaintiff nursed Mrs. Miller for several months previous to her death; in fact, there is no material evidence to the contrary; and Miss Kate Tichenor, a disinterested witness, testified that on several occasions she heard the husband say he would pay her for her services.   On cross-examination this witness testified as follows:

"Q. At what time was it you heard Mr. Miller say he would pay her, Mrs. Ewing, for her services—what time was that?   A. Well, it was one time in the morning when I was there, and one time in the evening—in the afternoon.   Q. You heard him say it twice?   A. Yes, sir; and three times I heard him say it.   Q. What do you think of the necessity of his saying it so often?   A. He said

that to satisfy his wife; she seemed to worry, and she would say to him in my presence that she wanted (she would always call her Margaret) that she wanted Margaret to be paid; and he said she would be paid; that would be the answer to his wife in my presence. 'She shall be paid well, and paid five times,' he said.''

The evidence shows that the charge of trained nurses in cancer cases is from thirty-five to fifty dollars per week, where the services of a trained nurse may be had, but that few trained nurses would take a cancer case; that the charge of an untrained or "practical" nurse in such cases is from twelve to eighteen dollars per week. The period of Mrs. Ewing's continued services was thirty-two weeks.

It has been said that in cases of this character the verdict of a jury is entitled to great weight. McCoy's Admr. v. McCoy, 125 S. W., 177. There is sufficient evidence to support the verdict, and a verdict supported by some evidence will not be disturbed upon appeal unless it is flagrantly against the evidence, a condition which does not obtain in this case.

Judgment affirmed.