## Louisville & Nashville Railroad Company v. Conn.

(Decided February 26, 1918.)

### Appeal from Garrard Circuit Court.

1. **Appeal and Error—Subsequent Trial—Instructions.**—The opinion upon a former appeal of the same case is the law of that case upon subsequent trials and appeals, and if the testimony upon the subsequent trial is substantially the same as upon the first one the trial court should proceed in accordance with the opinion on the first appeal; but if upon a subsequent trial additional evidence is heard producing a substantial change so as to create an issue, about the truth of which men of reasonable and fair minds might differ, it is then the duty of the court to submit the issues to the jury although upon the first appeal the judgment was reversed because a peremptory instruction was not given.

2. **Waters and Water Courses—Damages by Overflow—Nuisance—Actions.**—If one's land is caused to be overflowed by structures erected by another, the injured person may recover damages therefor which must be "once for all" if the structure is permanent, but may be from time to time upon each recurring injury if the structure is temporary.

3. **Waters and Water Courses—Damages by Overflow—Nuisance—Obstructions.**—If the obstruction is one that may be readily remedied, removed or abated at a reasonable expense, it may be treated as a temporary one and the rights of the parties determined accordingly, otherwise it should be treated as a permanent one with the consequent adjustment of the parties' rights.

4. **Waters and Water Courses—Obstructions.**—If the complained of obstruction is treated by the parties throughout the trial as being permanent or as being temporary, and the trial is conducted upon the theory that it is the one and not the other, the court should instruct the jury upon the theory that the obstruction was of that nature which the parties so treated it.

5. **Waters and Water Courses—Damages—Obstructions.**—If the obstruction is permanent the measure of damages is the difference between the vendible value of the property just before the injury and the same value just after it; but if it is temporary the measure of damages is the difference between the value of the use of the property from the time of the injury to the filing of the suit.

6. **Witnesses—Expert Testimony.**—An expert testifying from his scientific knowledge as well as actual observation may, in addition to testifying to the facts, give his opinion to the jury drawn from those facts, since such testimony from such a witness does not violate the rule that the province of the jury shall not be invaded by the testimony of the witnesses.

J. E. ROBINSON, SHELBY, NORTHCUTT & SHELBY, BENJAMIN D. WARFIELD and LEWIS L. WALKER for appellant.

EMMET PURYEAR, ROBERT HARDING, ROBERT TOMLINSON and JAMES I. HAMILTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is the second appeal of this case, the opinion on the first one being reported in 166 Ky. 327. It is a suit brought to recover damages to the property of the appellee, who was plaintiff below, caused by the water from Paint Lick creek overflowing his premises which he alleges was produced by the improper construction of a bridge across the creek which the defendant constructed in July, 1909, for its railroad track. Plaintiff recovered a verdict upon the first trial for $2,000.00, upon which judgment was rendered, and that judgment was reversed in the opinion, *supra,* upon the sole ground that the testimony heard upon the first trial showed that the flood producing the damage (which flood occurred in March, 1913) was an unusual and unprecedented one which the defendant could not reasonably anticipate, and that its bridge of which complaint is made was so constructed as to provide for the escape of water from usual and ordinary rains. The opinion expressly refrains from considering any other question. Upon the last trial there was a recovery in favor of plaintiff for the sum of $1,000.00, and from the judgment rendered in his favor for that sum defendant prosecutes this appeal, urging numerous grounds in its motion for a new trial against the correctness of the judgment. The grounds insisted upon here and discussed with earnestness in brief of counsel are (1) that the court should have sustained defendant's motion for a peremptory instruction in its favor; (2) error of the court in giving and refusing instructions, and (3) error in the admisson of evidence offered by plaintiff over the objections of the defendant.

Practically three-fourths of the brief for defendant is taken up with a discussion of the first ground mentioned, it being earnestly insisted that the evidence upon the last trial on the issues passed upon in the first opinion was substantially the same as upon the first trial, and that as a consequence, under the well-known rule of practice both in this and other jurisdictions the first opinion is the law of the case, and the motion for the peremptory instruction should have been sustained. There can be no controversy upon this point, and if the premises of defendant's counsel be correct, there can be no doubt but that his conclusions are also, and that the judgment is erroneous and should be reversed. The premises referred to are whether the testimony heard upon the last trial

upon the contested points was substantially the same as that heard upon the same points at the first trial. It therefore becomes necessary to make a brief *resume* of the testimony heard upon the last trial which was not heard upon the first one. What the proof tended as a whole to establish upon the first trial is substantially set out in the first opinion and which it will not be necessary to repeat here except to say that practically the same testimony was introduced upon the second trial. Our comparison of the number of witnesses who testified upon the two trials reveals that upon the last trial twenty-six additional witnesses were introduced by the plaintiff, practically all of whom testified to substantive facts bearing more or less directly upon the issues involved, while defendant introduced upon the last trial eleven additional witnesses. It is not necessary nor would it scarcely be possible to name seriatim the witnesses who testified upon the last trial and who did not testify on the first one, or to discuss their testimony in detail, since such a course would unduly lengthen this opinion and would not subserve any useful purpose either to the immediate parties to this suit or to the better establishment of the legal principles involved. We will therefore deal with this additional testimony only in a general way, but sufficiently to illustrate the conclusions which we have reached.

Upon the conditions of the complained of bridge and its alleged improper construction it was shown on both trials generally that two additional stone piers were put into the creek when the bridge was constructed in 1909, and that additional abutments were built encroaching upon the channel of the creek. Maj. S. F. Crecelius testified upon the last trial for the first time as a witness for plaintiff. He is shown to be a graduated civil engineer of twenty-four years' actual experience, a great deal of which has had to do with hydraulic engineering. He has been and is now connected with the Federal Government in that department of work and has had extensive experience in the construction of levees and dams and in looking after the improvement of rivers and harbors. He went upon the ground and ascertained the watershed of Paint Lick creek above the bridge, which extends up the creek for a distance of about six miles, and is practically that distance across from one side to the other. He also ascertained the geological as well as topographical con-

dition of the watershed. He showed from government records that in that vicinity, including the territory covered by the watershed, rains occurring every two or three years would produce a rainfall of an inch and a quarter per hour, and we find nothing in the record to show that the 1913 flood complained of was any greater than this. In fact the calculations made by the civil engineers for both parties seem to be based upon those figures. The witness testified that according to the rules for making such calculations for a maximum run-off of a rain of any length of duration producing a fall of one and one-quarter inches per hour Paint Lick creek at the bridge would deliver 7,409 cubic feet of water per second, running at the velocity of 4.26 feet per second which he calculated under the same rules that it would travel; that the number of cubic feet which the area under the bridge after deducting the space occupied by the extra piers and other obstructions, would carry was only 6,697 cubic feet of water per second, or 712 cubic feet less than would be delivered at the bridge by recurring rains of every two or three years. Five hundred and fifty feet above the railroad bridge he measured a cross section of the creek and found that at that place 12,017 cubic feet of water would pass it per second within the banks, which is 5,440 cubic feet more than the capacity of the bridge, according to this witness. He furthermore said that the backing up of the water above the creek was caused by the small area of the opening under the bridge, and that the breaking of the levee and consequent overflow were, according to his opinion, due to the reduced area under the bridge and the holding back of (according to his calculation) 712 cubic feet of water per second. The method by which the witness Crecelius arrived at his calculations, and to which he testified, as, we understand from the record is the same as is recognized by all engineers and is according to the known rules of that branch of mathematics.

It is insisted by the expert civil engineers who testified for the defendant that the witness Crecelius wrongfully assumed some of the factors entering into his calculations, such as "the coefficient of roughness," the "wetted perimeter," "the sloping of the stream" and others not necessary to mention. But as these were ascertained from the local conditions which each engineer calculated for himself, this dispute raises an issue of fact

which it is not for this court to determine. There is abundant testimony that the plaintiff's premises were flooded when the water which had been backed up from the bridge broke over the levee and was precipitated upon the town of Paint Lick with great suddenness, and as Crecelius says that the backed-up condition of the water was due to the defective construction of the bridge, it is impossible for us to see why this testimony did not materially and substantially change that heard upon the first trial and therefore raise an issue of fact material to the case, and which went to the very foundation of it, and which it was eminently proper to submit to a jury.

The testimony of many of the other new witnesses for plaintiff heard upon the last trial bore upon the question as to whether the rain of 1913 was or not unusual. We do not find in the record for what length of time that rain fell, but a number of new witnesses living upon the head-water of Paint Lick creek and tributaries thereto above the bridge testified that other rains in the years 1905 and 1909 were not only equal to the 1913 rain, but even greater than that one. It was also shown by other additional or new witnesses that the floods of 1905 and 1909, after getting below Paint Lick for about three miles, were each higher than the 1913 flood, it being explained that the latter flood for that distance was due to the great precipitation of the water below the bridge when the levee broke letting it through and for the distance of about three miles below the water was high and left its sign upon trees and other objects. No flood was ever produced in the town of Paint Lick until the one of 1913, but on two occasions since then, both in 1915, the town has been flooded, one of which was greater than the flood complained of here. Each flood producing an overflow in the town has been since the construction of the bridge complained of. If these witnesses who did not testify upon the first trial are to be believed, the 1913 flood was not an unusual or unprecedented one, for according to their testimony such rains occur every two or three years. We then have additional testimony upon the last trial showing the incapacity of the bridge to carry off the water which would be brought to it by a maximum rainfall in that vicinity, and testimony that such rains occur every two or three years and they can not therefore be considered unusual or unprecedented.

It is only where there is no conflict in the testimony and there can be no room for dispute between reasonable and fair men as to the truth of the matter that the court should take the decision of the issue away from the jury by directing a particular verdict at its hands. Kentucky Traction & Terminal Co. v. Wilson, 165 Ky. 123, and Nelson v. Black Diamond Mining Co., 167 Ky. 676. Where the evidence is conflicting and reasonable minds might draw different conclusions therefrom the court should submit the issues under appropriate instructions to the jury, and its finding will not be disturbed by this court although it sitting as a jury might have reached a different conclusion. Louisville & I. R. Co. v. Roemmele, 157 Ky. 84; C. N. O. & T. P. R. Co. v. Goode, 169 Ky. 102; Hostetter v. Greene, 170 Ky. 119; First National Bank v. Stephens & Steeley, 157 Ky. 663; Miller's Admr. v. Ewing, 163 Ky. 401; Forgy v. Rutledge, 167 Ky. 182, and Interstate Coal Co. v. Shelton, 160 Ky. 40.

Because of the additional testimony introduced upon the last trial, substantially strengthening that heard upon the first one, and under the doctrine announced in the case *supra,* which is firmly fixed by the rule of practice prevailing in this jurisdiction, we are constrained to hold that the court did not commit error in refusing to take the case from the jury, and that there was sufficient evidence to sustain its verdict, which necessitates our overruling the first ground urged for a reversal.

In the (2) complaint with reference to giving and refusing instructions, criticism is made of the trial court in giving to the jury instructions numbers 1 and 2 upon its own motion, over the objections and exceptions of the defendant, and in refusing to give the jury instructions "A," "B" and "C" offered by it. The objection to instruction number 1 is based solely upon the idea of the insufficiency of the evidence to authorize it. No error in the phraseology of the instruction is pointed out, and inasmuch as we have already found that the evidence justified the submission of the issue to the jury, the criticism of that instruction is unavailable.

Instruction number 2 is criticised only because it treated the alleged cause of the injuries complained of as being a permanent structure and authorized the jury to return a sum in damages measured by "the difference between the fair market value of his real property before it became known in that locality that such a rain-

fall as could be reasonably expected by prudent persons would produce such overflow, if they did produce them, and the fair vendible value of his property immediately after such information was generally prevalent in that locality, if it was so, not to exceed the amount claimed in the petition," &c. It is not disputed but that the criterion for measuring the damages if the complained of obstruction was permanent, as contained in that instruction, is the correct one, but it is insisted that under the rule laid down in the cases of M. H. & E. R. Co. v. Graham, 147 Ky. 606; same v. Thomas, 148 Ky. 131; L. & N. R. R.Co. v. Whitsell, 125 Ky. 433; I. C. R. R. Co. v. Haynes, 122 S. W. R. (Ky.) 211, and L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 280, that the court should have submitted to the jury whether the obstruction was permanent or only temporary, and if permanent to find the damages according to the rule stated in instruction number 2, but if temporary to confine the damages to a sum representing the diminution, if any, in the value of the use of the real property from the time of the flood to the filing of the suit, which, under the rule announced by the cases, *supra,* is the correct measurement of the damages where the complained of obstruction is temporary. The cases last cited, together with others from this court, define a temporary obstruction or nuisance to be one that may be readily remedied, removed or abated at a reasonable expense, and where the nuisance is of that nature repeated recoveries may be had for each recurring injury; but where the obstruction is permanent, the recovery must be "once for all," and the action must be brought within the statutory period of limitation after the first injury. The general rules governing courts in the trial of actions similar to this as just outlined are well understood, and are applicable in this state where the facts require it, but in order for a litigant to be entitled to insist upon an observance of those rules by the trial court there must be a presentation or insistence made in the case of some character, either by pleading or by evidence, of the issue upon the question of the nuisance being permanent or only temporary. If the case is treated by the parties and tried out upon the theory that the obstruction is in its nature the one or the other (permanent or temporary) it will be treated by the court when it comes to instruct the jury as being of that nature which the parties throughout the trial considered it. C. & O. Ry. Co. v.

Stein, 142 Ky. 515; M., H. & E. R. Co. v. Wiar, 144 Ky.
206, and C. & O. v. Robbins, 154 Ky. 387. Illustrating this
point of practice, this court in the Stein case, *supra,*
said:

"It often happens in cases like this that it is difficult
to determine with reasonable certainty whether the acts
complained of are permanent or temporary in their na-
ture, and when there is doubt upon this question we have
adopted the rule of leaving it to the parties to the litiga-
tion to determine by the character of suit they bring and
the proceedings thereunder whether or not the thing com-
plained of shall be treated as permanent or temporary.
In other words, where the nature of the improvement is
in doubt, and the parties treat it as permanent, we will
not interfere with their conclusion; and so, if they treat
it as temporary. City of Madisonville v. Hardman, 29
Ky. 253; Board of Park Com. v. Donahue, 140 Ky. 502;
Louisville & Nashville R. R. Co. v. Whitsell, 125 Ky.
433."

In this case both under the pleadings and the evi-
dence the nuisance was treated by the parties as being
permanent in its nature. There were no exceptions
(though objections were made) to the testimony given by
plaintiff as to the extent of his damages under the rule
measuring them where the nuisance is permanent, and no
testimony offered by defendant or sought to be elicited
by cross-examination as to the extent of the damages
under the rule when the obstruction is temporary, and
it is plainly a case where the parties throughout the trial
considered and treated the matter as though the nuis-
ance was permanent, and it was therefore too late to raise
the question for the first time when it became necessary
to instruct the jury, which was after the evidence was
heard and the case closed. Besides, it is extremely
doubtful but that the court in this case would have been
justified in assuming that the complained of nuisance was
permanent, for it is only in cases where *a doubt* exists in
the mind of the court that the issue as to the character
of the nuisance (whether temporary or permanent)
should be submitted to the jury. We have here a steel
bridge with concrete piers, and it would seem that if it
were possible to create a permanent structure by arti-
ficial means the one in this case would undoubtedly be
such. But, however that may be, under the rule laid

down in the Stein case and others, we do not think the court erred in the matters complained of.

Instruction "A" offered by the defendant was fully covered by instruction number 1 given by the court, which instruction number 1 also confined the damages to plaintiff's property to its market value (with the proper qualifications) just *before* and immediately *after* the flood, which feature of that instruction protected defendant's rights as completely as was intended by instruction "B" offered by it. So that we do not find that defendant's rights were prejudiced by the court refusing to give either of the instructions offered by the defendant, nor do we find any error in the instructions which the court gave.

Under the (3) and last objection made to the judgment it is insisted that the court erred to the prejudice of defendant in permitting plaintiff's expert witnesses to testify to and give as their opinion that Paint Lick creek would have taken care of the water at the time complained of without creating a flood but for the obstructions growing out of the construction of the bridge, which were produced not only from physical obstructions put into the channel of the creek reducing its carrying capacity, but because of such reduction and consequent impeding of the flow, islands, sandbars, and other obstructions were caused to form in the bed of the creek, it being explained in the evidence that the backing up of the water had a tendency to create such formations. To undertake to differentiate between when opinion evidence given by an expert is admissible and when not would require the writing of a book, which we will not attempt here. Generally speaking, "As to conclusions upon matters within the scope of common knowledge and experience, the jury is a tribunal well fitted to perform this task." 11 R. C. L., page 565. Where the matters concerning which the opinion is sought are those of common knowledge and experience, it is improper for the witness to invade the province of the jury and give his opinion concerning them, but, it is furthermore the law that, "It is evident that deductions from observed facts must often be necessary, which require scientific or specialized knowledge or experience and for which the general common sense and practical experience of the jury are inadequate." 11 R. C. L. 572.

The editor of the work from which we have quoted follows the last excerpt with illustrations, and on page 573 says, "From such situations arises the necessity of admitting in evidence the opinion of experts." The rule just adverted to has been adopted and applied by this court, as will be seen from its opinion in the case of Aetna Life Insurance Co. v. Bethel, 140 Ky. 609, wherein upon the point under consideration it is said: "It is permissible in the examination of a witness introduced as an expert to submit a hypothetical question and ask his opinion thereon; or, if the witness has personal knowledge of the matter he shall inquire of concerning, he may give his opinion based on such knowledge. But the question should not be put in such form as to make the answer the conclusion of the witness instead of his opinion. It is the office of the expert to express an opinion and the province of the jury to draw its own conclusions from the opinion so expressed."

The expert witnesses in this case were not giving their opinion altogether hypothetically. They each had "personal knowledge of the matter" about which they were being inquired. They had been on the ground and made a survey and complete inspection, and it was proper to permit them to give their opinion upon the subject matter about which they testified. In doing so they not only placed before the jury their opinions, but the facts upon which they were based, and we can not agree with counsel that the court erred in this particular. Nor do we find any objection to the testimony because a question propounded assumed the existence of matters for which no recovery could be had. When the alleged objectionable question is examined, it will be found confining the inquiry to the damage directly done by the construction of the new bridge, or that which was liable to be consequentially produced because of the way and manner in which it was constructed.

We are asked by appellee to review the ruling of the court in declining to give to the jury certain instructions offered by him, but under the condition of the record the question is not presented in the way to make what we might say upon that subject binding. It would be mere dictum, and we consequently decline the request, and the question is not to be considered as settled by this opinion.

Upon the whole case we find no error prejudicial to the substantial rights of the defendant, and the judgment is therefore affirmed.