## Barrett's Administrator v. Brand.

(Decided March 12, 1918.)

### Appeal from Mason Circuit Court.

1. Evidence—Hypothetical Questions—Experts.—In a hypothecated question propounded to an expert, no fact should be assumed ex-

cept such as is established by the testimony, or such as the jury might be authorized to find from the testimony, and if the question is predicated upon facts so proven, or for the establishment of which there is testimony in the record, an objection to it will not lie.

2. Witnesses—Experts.—It is incompetent for a witness to be permitted to invade the province of the jury by testifying as to the truth or falsity of the issue in contest, but this rule does not prevent a professional expert witness from giving his scientific opinion upon matters requiring scientific or expert knowledge upon subjects not presumed to be within the knowledge of the average layman, since in doing so he is testifying to facts and not giving his conclusions.

3. Trial—Instructions—Proximate Cause.—Where an instruction defines the measure of the defendant's duty and directs a jury to return a verdict against him if the injury is the proximate result of a failure to perform such duty, it is unnecessary for the instruction to go further and state to the jury what would not be the proximate cause of the injury.

4. Trial—Instructions—Defining Words.—The word "operation" having only a plain and easily understood meaning and not technical, it is unnecessary that the court should define it in an instruction to the jury.

5. Evidence—Self-Serving Declarations—Res Gestae.—Words, actions and conduct occurring at and during the principal transaction, or so near thereto as to be a part of it, and spoken or done under such circumstances as to preclude the presumption that they were intended to be self-serving, are admissible as a part of the res gestae, and under this rule the statements, acts and conduct of a physician while operating upon a patient are admissible in a suit against him for malpractice.

ALLEN D. COLE, H. W. COLE and J. M. COLLINS for appellant.

WORTHINGTON, COCHRAN & BROWNING and SLATTERY & REES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a malpractice suit brought by appellant as administrator of his wife, Florence Barrett, against the appellee, a physician and surgeon, to recover damages because of the death of plaintiff's decedent which he alleges was the proximate result of negligence, unskillfulness and carelessness on the part of the defendant while performing an operation upon decedent for chronic ovaritis.

The negligence charged was denied by answer, and upon trial the jury returned a verdict in favor of de-

fendant, from which plaintiff prosecuted an appeal, and
the judgment was reversed in an opinion reported in
165 Ky. 616. In that opinion the substantial and ma-
terial facts are recited somewhat in detail, and it will
be wholly unnecessary to repeat them here, they being
practically the same upon the last trial as on the first
one. The first judgment was reversed, as will appear
from the opinion, upon the two grounds that (1) the
court erred in permitting the defendant to testify, since
it was held that under subsection 2 of section 606
of the Civil Code of Practice he was an incompetent
witness; and, (2) that the court erred in giving two in-
structions which are set out in the opinion, but all other
questions were left open. Upon the second trial, in
which the court eliminated the errors pointed out when
the case was first here, the jury again returned a verdict
for the defendant, and to reverse it this appeal is prose-
cuted.

There are numerous errors urged against the cor-
rectness of the judgment, but we deem it necessary to
consider only such as will be discussed in this opinion.
From the testimony as recited upon the former appeal,
and which was the same upon the last trial, it appears
that Mrs. Barrett had long been a sufferer, and perhaps
because of her almost constant pain she had become ad-
dicted to the use of morphine, and in addition had con-
tracted other ailments more or less dangerous, and at
the time of the operation complained of she was in an
exceedingly precarious condition. The operation oc-
curred in November, 1911, and in the early part of that
year two minor operations had been performed by the
defendant, but the one in November, which is termed the
major operation, is the one about which negligence is
charged. Other physicians and a trained nurse at-
tended the operation, and the latter gave to and re-
ceived from the defendant the gauze pads which he used
while performing the operation. The patient showed
signs of dissolution, and the cavity was hurriedly closed
up to prevent it, and shortly thereafter the nurse dis-
covered that one of the pads was missing. In closing
up the cavity, as is usual in such cases, a gauze drain-
age was arranged so as to let out pus or other deleter-
ious substances, and in it was one of the pads which
was discovered four days after the operation by the
wound being opened up, at which time some of the

parts, including some of the smaller intestines, were found to be inflamed and the patient shortly died. The chief act of negligence complained of is that of leaving the pad in the patient, but under the evidence and instructions of the court the jury found that this was not an act of negligence, or if it was it could not be termed the proximate cause of the patient's death, and accordingly returned the verdict complained of.

It is first insisted that the court erred in permitting a hypothetical question to be asked of two professional witnesses introduced in behalf of defendant, because it is claimed that there was incorporated in that hypothetical question facts which were not proven, or for which there was no evidence tending to establish them. Eleven such wrongfully incorporated facts are pointed out as being erroneously included in the complained of hypothetical question, which is so long that we will not encumber this opinion with its repetition, but we have thoroughly examined the record and we are convinced that counsel is in error when he says that there was no evidence to support the assumption of the existence of the alleged wrongfully incorporated facts. That it is error to incorporate facts in a hypothetical question propounded to an expert, for the existence of which there is no testimony in the record, is thoroughly established. In support of it counsel cite many authorities from the text books and opinions from foreign courts, and also the case of Champ v. Commonwealth, 2 Met. 17. A still later case from this court upholding the rule is that of Kentucky Traction & Terminal Company v. Humphrey, 168 Ky. 611, in which many authorities both foreign and domestic are referred to, but if the complained of vice has no existence in point of fact, manifestly there is no room for the application of the rule, and as stated we are convinced that there is substantial evidence in the record authorizing the court to allow the predicating of the hypothetical question upon all of the material facts complained of, and this objection will have to be denied.

Again, it is insisted that there was error in permitting the professional witnesses to state in substance that the case was practiced according to the approved methods of the medical profession, and that according to the opinions of those witnesses the patient in her diseased and run-down condition would have and as a mat-

ter of fact did die from those conditions, notwithstanding there might have been negligence in the manner complained of. It is, of course, fundamental that although an act may be negligent and involve a violation of duty, still before a cause of action can be predicated thereon the injury flowing therefrom must have been the proximate result of such derelictions. While it is not denied in this case that the pad was overlooked and left in the patient's body, yet it is clear that it was confined in the drainage gauze, which was an essential and necessary part of the operation, and it was therefore not in a condition to produce injurious consequences. However that may be, the rule is that while an expert witness may not take the place of the jury by stating whether certain acts constitute negligence, he may give his opinion in regard to matters which require scientific or specialized knowledge or experience, and for which the general common sense and practical experience of the jury are inadequate. The rule is thus generally stated in 11 R. C. L. 572, wherein the further statement is made that: "The untrained layman would be unfit to decide what condition of bodily or mental health or disease is indicated by a recital of obscure and unusual symptoms; still less would he be able to form a reasonable opinion as to the propriety of the medical treatment given, or the probable continuance of the disability. A jury of country farmers could not estimate the value of a city lot by a physical description of it, and such illustrations might be indefinitely multiplied. From such situations arises the necessity of admitting in evidence the opinion of experts."

But this rule should not be extended so as to permit witnesses to testify to conclusions upon matters within the scope of common knowledge and experience, since the jury is a tribunal well qualified and fitted to perform that task. 11 R. C. L. 565.

These questions were considered by us in the case of L. & N. R. R. Co. v. Conn, 179 Ky. 478, and the general rules as above stated were therein recognized and applied.

It is insisted that some of the complained of questions went beyond the rule permitting the introduction of the opinions of experts and usurped the functions of the jury which, if true, they were evidently improperly admitted. For illustration, the defendant's expert wit-

nesses were permitted to state whether in their opinion the case was practiced according to the approved methods of surgery, but they were not asked nor were they permitted to state whether any particular act done or permitted to be done was or not a careless or negligent one. According to our view, there is quite a distinction between whether a case has been practiced according to the rules of surgery and whether those rules or any of them are dictated by the soundest prudence and the most careful considerations. A case might be practiced according to such approved methods of surgery and still not be characterized by careful and prudent action, and we are clearly of the opinion that the complained of questions and answers did not invade the province of the jury and were proper subject matters of inquiry of the expert witnesses.

Objection is made to evidence given by some of the assisting physicians concerning statements made by the defendant relating to the conditions which he found, and other subjects connected with the operation, during and while he was performing it. It is contended that such statements are hearsay, self-serving and incompetent. To the general rule excluding hearsay evidence there are many exceptions, one of which is evidence apparently hearsay in its nature but strictly not so coming within the *res gestae* rule. This rule renders competent statements, acts, or conduct accompanying or so nearly connected with the main transaction as to form a part of it. This is upon the ground that such declarations, exclamations or conduct were made or performed under such circumstances as to raise a reasonable presumption that they were spontaneous and that they sprang out of the transaction itself, and so as to exclude the presumption that they were the result of premeditation or design or intended for any self-serving purpose. The general rule upon the subject is stated in 10 R. C. L. 976, thus:

"Such statements are of the *res gestae,* are of the nature of verbal acts and are admissible in evidence with the remainder of the transaction which they illustrate."

On page 977, in defining the conditions under which the *res gestae* rule will apply it is said: "To bring acts and declarations within the doctrine of *res gestae,* they must be connected with, and grow out of, the act or

transaction which is the subject matter of inquiry so as to form one continuous transaction, and must in some way illustrate, elucidate, qualify or characterize the act, and, in a legal sense, be a part of it.''

Further along, and on page 980, the author of the work says: ''The declarations of a party may be evidence for himself, as a part of the *res gestae* when they accompany and explain his actions; but not when they are mere self-serving declarations and do not accompany the acts in issue but are made at a place distant from it.''

The rule as found stated generally in the excerpts made has been many times followed by this court, as will be seen from the following cases: McLeod v. Ginther's Admrx., 80 Ky. 399; O'Donnell's Admr. v. Louisville Elec. Light Co., 55 S. W. 202; Brown v. Louisville Ry. Co., 53 S. W. 1041; Louisville & N. R. R. Co. v. Shaw's Admr., 53 S. W. 1048; Louisville Ry. Co. v. Johnson's Admr., 131 Ky. 277; Lewis Admr. v. Bowling Green Gas Light Co., 135 Ky. 611; I. C. R. R. Co. v. Houchins, 125 Ky. 483; Fidelity & Casualty Co. v. Cooper, 137 Ky. 544; Owensboro City Ry. Co. v. Rowland, 152 Ky. 175. See, also, Jones on Evidence, section 344. Under this well established rule there can be no doubt but that the evidence complained of constituted a part of the *res gestae* growing out of the main transaction, which was the operation, and serving to explain it, and the objection is therefore untenable.

It is again insisted that the instructions are erroneous and that the judgment should be reversed for that reason. The instructions complained of are Nos. 1 and 2, given by the court. No. 1 is criticised because it did not expressly say to the jury that decedent's death ''was not caused by ovaritis or other disease, if any, not produced by the operation.'' The court in the complained of instruction, after defining the duty of the defendant upon undertaking the operation, said: ''And they (the jury) further believe from the evidence that such negligence or want of care, if any, on the part of defendant was the proximate cause of the death of the decedent,'' &c. It is contended that following the quotation just made the clause first above should have been inserted, but we do not find any merit in this contention, for if the negligence of the defendant, if any, was not the proximate cause of the patient's death, the defendant

would not be liable; or if her death was not the result of the disease with which she was afflicted, it would necessarily follow that the operation was the cause of it, and if negligently performed the defendant would be liable. It is not essential in instructing the jury to negative what would be a proximate cause, for the jury are presumed to possess some intelligence and to be able to understand the instruction without such negation.

It is furthermore claimed in regard to the instructions that the court should have defined what constituted an operation, i. e., that the court should have said to the jury in its instructions that the operation commenced at the beginning of making the incision and ceased when the incision was closed; but we do not regard the term "operation" to be one of such technical meaning as to require a definition at the hands of the court. Any ordinary layman would know that an operation included everything done from its commencement until it was completely finished. Every act necessary to its performance is included within the known meaning of the term. As well might it be insisted as being necessary to define the word "trip" to mean and include all the time from the moment the traveler boarded the instrument of conveyance or mounted his steed until he alighted therefrom at his destination. These acts are component parts of and essential to a trip, but no one would seriously insist that it was necessary to so define the word by an instruction.

Instruction No. 3 given by the court is one which this court in the first opinion directed should be given if the evidence was substantially the same. It fully states the duty of the defendant with reference to reopening the wound for the purpose of searching for the missing pad.

It is lastly insisted that the verdict is flagrantly against the evidence, and is not sustained by it, but we can not agree with this. There is abundant testimony to show that the unfortunate patient because of her long standing ailments was in a most precarious condition. According to the testimony she had an extremely short time in which to live without the operation, and it was resorted to as a last chance. Unfortunately, it was unsuccessful, and although it may be conceded that the leaving of the pad in the manner described was an act of negligence, yet before liability could be fixed upon

the defendant therefor it must further be shown that such negligence was the proximate cause of her death.

These matters were submitted to the jury by instructions which we think are not subject to the criticism aimed at them, and we are not authorized, under the well established rules of practice governing this court, to disturb the verdict, and the judgment is therefore affirmed.