## Union Underwear Co. et al. v. Barnett.

Feb. 21, 1941.

Todd & Beard for appellants.

Kinsolving & Reasor, R. F. Matthews, and Bernard B. Davis for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Death stalked Highway 60 in the early morning hours of April 7, 1939, and claimed as its victim James W. Barnett who was returning in his automobile to his home in Shelbyville from a tourist camp two and a half miles west of that city. The instrumentality employed was a heavy truck owned by the appellant, Union Underwear Company, driven westwardly, which collided with Barnett's car about a quarter of a mile west of the city limits. The night was clear, the lights of both vehicles were burning, and the only testimony as to the cause of the fatal accident was that given by the appellant, Carroll Payton, the driver of the truck, who stated that he saw Barnett's automobile when it was three or four hundred feet away approaching at a speed which he estimated to be fifty miles an hour, and that when it was a car length or a car length and a half from the truck, it swerved to the left and struck the left front bumper, fender and body of the truck which he was driving on the north side of the road, its left extremity at least twelve inches from the center line. No person other than the victim and the truck driver witnessed the collision, and unless the position of the vehicles or the marks on the road immediately afterward indicated that some part of the truck was south of the center line at the time the collision occurred, the judgment from which this appeal is prosecuted awarding the appellee administratrix $5,000 damages for the death of her decedent and $115 for damages to the automobile, cannot be sustained.

According to the undisputed testimony, Barnett's automobile, immediately after the accident, which occurred shortly before one o'clock A. M., was standing diagonally across the road headed northeast with its left front wheel thirty-two inches north of the center line, and the truck was parked off the concrete on the north side of the road at a point two hundred and ninety-five feet west of the automobile. Only the left

front fender of the truck appeared to have been seriously damaged, although marks on the left side of the body indicated that it had been in contact with the automobile for its entire length. According to the appellant, Payton, he was driving at a speed of thirty or thirty-five miles per hour when the collision occurred and proceeded on westwardly until he reached a point where the shoulders of the road were sufficient to permit him to stop without obstructing traffic. Glass from the wrecked automobile, the whole left side of which was demolished, extended along the road, the entire distance from the car to the truck, and the left front door and fender of the car were found twenty or thirty feet west of where it was standing. A spot of oil about four feet in diameter was discovered north of the center line, and a scratch in the concrete extended from a point sixteen inches south of the center line to a point thirty-two inches north. This scratch, in the opinion of several witnesses, was caused by one of the iron spokes of the automobile's left front wheel, and terminated in a slight dent or hole in the concrete directly underneath the hub of the axle. Marks apparently caused by scorched rubber about four feet south of the center line of the road, and skid marks south of the center line were observed when witnesses visited the scene the following morning, but the testimony concerning these marks is of doubtful competency and throws no light upon the position of the cars at the time of the collision.

It is argued by appellee's counsel that the position of the automobile, the location of the spot of oil, and the scratch and dent referred to, show that the collision occurred south of the center line of the road; that the upper part of the Barnett car, after it had been struck, leaned against the left side of the body of the truck; that after the truck passed it let the car down causing the broken left front wheel to strike the concrete eighteen inches south of the center line; that the dropping of the car from the side of the truck, forced or pitched it across the road to the point where it came to rest thirty-two inches north of the line, and that when it came to a stand-still the oil poured out of the crank case. It is also suggested that the fact that the portion of the scratch extending north of the center line was discolored, apparently by the oil, and the fact that the portion of the scratch south of the line appeared to be

clean, is significant, but its significance is not apparent. Unfortunately a diagram drawn on a blackboard was used at the trial, and in the absence of this diagram we are unable to ascertain the direction in which the scratch extended, since there is no testimony showing it.

Counsel for appellants contend that if the automobile had been pulled across the center line, the back of the car would have been toward the east instead of the west, since the points of contact were the left front wheels and fenders and the truck was going west; and that it is inconceivable that after the collision, with its left front wheel completely down, the automobile, a 1929 Ford coupe, could have had sufficient momentum to drive a hub fifty inches across the concrete and gouge a dent where it came to rest. They further argue that the oil north of the center line shows that the collision occurred there, since, if the collision occurred south of the line the automobile, of necessity, would have had to remain there until the twenty-three foot body of the truck had passed, during which time the oil would have run out of the crank case. They also point to the fact that the wrecker had moved the wrecked automobile before the marks were discovered, and that the wrecker in moving the car might have caused the scratch in the concrete to which so much importance is attached by appellee.

Appellee's counsel candidly admit in their brief "the oil on the pavement, the scratch in the concrete, and the dent, or hole, in the concrete is all the evidence of consequence offered by appellee and upon which she must stand or fall".

We have regretfully concluded that the evidence offered by appellee, notwithstanding the ingenuity of the deductions drawn from it by appellee's counsel, is, in the last analysis, insufficient to support the verdict in her favor, since it merely showed the possibility that the truck might have been on the wrong side of the road when it collided with the automobile. Hence the Court should have peremptorily instructed the jury to return a verdict for the appellants. Potter et ux. v. Consolidated Coal Co. et al., 276 Ky. 404, 124 S. W. (2d) 68; Nugent et al. v. Nugent's Ex'r et al., 281 Ky. 263, 135 S. W. (2d) 877.

Judgment reversed for proceedings consistent with this opinion.