**HOOVER MOTOR EXPRESS COMPANY, Inc., et al., Appellants,**

v.

**Fannie EDWARDS, Executrix of the Estate of Leamon D. Edwards, Deceased, Appellee.**

Court of Appeals of Kentucky.

March 4, 1955.

As Modified on Denial of Rehearing April 29, 1955.

Franklin & Franklin, Madisonville, for appellants.

R. Vance Hartke, Evansville, Ind., Gordon & Gordon & Mills, Madisonville, for appellee.

MONTGOMERY, Justice.

This appeal is prosecuted by Hoover Motor Express Company, Inc., and Cleve Burkheart, driver of its truck, from a judgment in the sum of $10,000 in favor of Fannie Edwards, executrix of the estate of Leamon D. Edwards, deceased.

The decedent was fatally injured in a collision between appellant's loaded trailer-truck and his passenger automobile. The truck driver was the only eyewitness. The collision occurred about ten miles north of Madisonville on U.S. 41. The truck was traveling south, meeting decedent's car traveling in the opposite direction. The time was shortly after midnight. The highway was covered with ice and snow and was described by the truck driver as "very, very slick, a solid sheet of ice." The car was equipped with chains but the truck was not.

Appellee called the truck driver as if upon cross-examination. He testified that both vehicles were traveling at approximately thirty to thirty-five miles per hour as they approached each other, that each vehicle was traveling on its proper side of the road, and that when decedent's car was only twelve or fifteen feet away from his truck it suddenly swerved to the left into his driving lane. He stated that he cut to the left to avoid striking the car but "didn't have time to do anything", and that the collision occurred on his right side of the highway. The truck went off its left hand side of the highway and turned over and the automobile went off its left hand side.

The pictures introduced in behalf of appellee, which were taken the next morning by a state highway trooper, show that the collision took place just after the truck was emerging from a curve to its right and on a slight down grade. One of the pictures shows that there were two curved marks a few inches apart extending from the east edge of the yellow line on the east side of the highway across the center line and beyond the yellow line in the west lane for a total approximate distance of two and one-half feet. It is undenied that these two curved gouges were made by the "U" bolt fastening the right rear spring to the axle housing on decedent's car. The right rear wheel on the car was demolished. The right front fender of the truck struck between the right rear wheel and the right rear door of the car.

Two other witnesses who arrived at the scene of the accident shortly after it happened described certain tracks on the road and shoulder as having been made by ap-

pellant's truck, one of them saying that the tracks led gradually to the truck, and the other saying that the tracks went straight off the road when the truck was coming out of the curve. One of these witnesses testified to seeing debris and glass on the pavement about fifteen or twenty feet north of the "U" bolt mark, but no other witness testified as to this.

There are two questions presented on the appeal: (1) whether appellants were entitled to a directed verdict at the close of appellee's testimony; and (2) whether the testimony of two witnesses with respect to the speed of the truck was competent. Appellants contend that the physical facts support the truck driver's testimony that the collision occurred in the truck driver's proper lane of the highway and that the decedent was negligent in driving his car into that lane, thereby causing the accident. Appellee's theory is that the truck, after rounding the curve, proceeded into the wrong driving lane and appellee's decedent turned into his left lane to avoid the accident and was then struck.

The case turns on the question as to which vehicle turned into the wrong driving lane first.

It is evident from the location of the two gouge marks on the surface of the highway, and from the damaged parts of the truck and car, that at the time of the collision the right front portion of the truck struck the right rear portion of the car. These physical facts were undenied and were readily ascertainable from the testimony as to the marks seen, and from the pictures of the highway and of the two vehicles. This being so, it is a reasonable certainty that at the time of the collision the truck and car both, in whole or in part, were in the wrong driving lanes. The marks made by the "U" bolt, which would be a matter of inches from the location of the right rear wheel of the car, show that at the time the "U" bolt struck the pavement the right rear wheel of the decedent's car was still in his proper driving lane, with the remainder of the car over and across the center line. Inasmuch as the right front portion of appellant's truck struck the decedent's car at a point between the right rear door and rear fender, then at that time the front end of appellant's truck must have been wholly in the wrong driving lane; and when the tracks, as shown by the photographs and as testified to by two witnesses for appellee, are taken into consideration, the greater portion of the truck and trailer must have been across the center line of the highway.

■ The shortness of time within which this collision occurred, as testified to by the truck driver, when considered with the above testimony and with the known fact that a lighter car has greater mobility than the heavier trailer-truck, affords a basis from which to infer that the truck entered the wrong driving lane first and that decedent turned his car to the left in an effort to avert the collision.

■ The statement made by the truck driver that he was in his own proper driving lane at the time of the collision, when considered with reference to the physical facts and testimony as above outlined, is very convincing that the truck driver either did not realize the location of his truck or was mistaken. As was said in Corbin's Ex'rs v. Corbin, 302 Ky. 208, 194 S.W.2d 65, 68, with reference to the testimony of an interested witness, "Courts are not inclined to give the same weight to the evidence of interested witnesses as is ordinarily given to those disinterested. Such must be clear and positive in order to be accepted as conclusive." The veracity of the witness was a question for the jury. Under the facts, the truck driver's statement as to the position of his truck cannot be accepted as conclusive.

It has been held in Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S.W. 2d 48, 51, that:

"We have frequently refused to say that the resulting condition of colliding vehicles, road marks, and other similar physical evidences of the manner in which a collision occurred were, of themselves, sufficient to overcome oral

testimony of actual witnesses to the contrary. Southern Oxygen Co. v. Martin, 291 Ky. 238, 163 S.W.2d 459; Silver Fleet Motor Express v. Casey, 288 Ky. 233, 155 S.W.2d 863; Union Underwear Co. v. Barnett, 285 Ky. 488, 148 S.W.2d 339. In other cases we have held that where the physical facts pointed so unerringly to the actual causes of the collision as to leave no room for a contrary determination, a verdict embodying such determination would be set aside as unsupported by the evidence. C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S.W.2d 335; Louisville & Nashville Railroad Co. v. Welsh, 272 Ky. 120, 113 S.W.2d 879. * * *"

Inasmuch as the facts in this case point unerringly to the conclusion that the truck was almost entirely in the wrong driving lane at the time of the collision, contrary to the statement of the truck driver, these physical facts together with the other testimony on behalf of appellee were sufficient to submit the case to the jury.

Union Underwear Co. v. Barnett, 285 Ky. 488, 148 S.W.2d 339, is distinguished from the present case because the left front end of the truck in that case struck the approaching car, while here, the right front end of the truck struck the car, thus indicating that the two trucks were in entirely different positions at the time of the collision.

 The second question as to the admissibility of the testimony of two witnesses, Forest Ed Northern and John Arivett, who were sought to be qualified as experts on the reasonable speed of operation of a trailer-truck under the conditions of this case presents a more serious problem. Each witness was permitted to testify that 20 miles per hour was a reasonable rate of speed for the truck to be driven on this occasion under the existing conditions. Each had only limited experience in driving a loaded tractor and semi-trailer such as this, and neither had ever driven one on slick or icy roads. Therefore, neither was properly qualified by reason of having had the requisite experience in driving the type of vehicle in question. In addition to the failure to qualify properly the two witnesses, there is the further objection that the matters inquired about were matters within the common knowledge of the jury, and to permit these two witnesses to give their opinions on this matter is an unwarranted invasion of the province of the jury. Louisville & N. R. Co. v. Conn, 179 Ky. 478, 200 S.W. 952; Barrett's Adm'r v. Brand, 179 Ky. 740, 201 S.W. 331; Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345.

Therefore, it is concluded that the evidence offered by the appellee, excluding the improper evidence above mentioned, was sufficient to take the case to the jury, but the case must be reversed because of the admission of the improper evidence as to a reasonable rate of speed as testified to by the two witnesses.

Judgment reversed.