CASE 4.—ACTION BY MARTIN HIBBITT AGAINST THE LOUISVILLE RAILWAY COMPANY.—June 7, 1910.

## Louisville Ry. Co. v. Hibbitt.

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

THOMAS R. GORDON, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Pleading—Admissions by Failure to Reply.—Under Civ. Code Prac. section 126, providing that every material allegation must be taken as true, unless specifically traversed, a plea of contributory negligence, being an affirmative defense, will be taken as true unless denied by reply.

2. Pleading—Affirmative Defense—Contributory Negligence—Omission of Reply—Waiver.—Where, in an action for injuries to a servant, plaintiff failed to traverse a plea of contributory negligence, and defendant, at the close of plaintiff's case and at the conclusion of all the evidence requested a directed verdict which was denied, plaintiff's omission to reply to the plea was not waived by introducing evidence and requesting instructions on the subject of the plea.

3. Master and Servant—Injuries to Servant—Fellow Servants—"Association Theory."—The "association theory," that a master will not be excused from liability for injury to one servant by the negligence of a fellow servant unless the servants are so engaged and situated as that each by carefulness and attention in the performance of his duties may protect himself from injury caused by the negligence of a person with whom he is working, obtains in Kentucky.

4 Master and Servant—Injuries to Servant—Fellow Servants—Motorman.—A street railway motorman is not the fellow servant of the motorman of another car running on the same line and employed by the same company.

FAIRLEIGH, STRAUS & FAIRLEIGH for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Appellee Hibbitt, a motorman on a street car running on Fifth street, was injured in a collision between the car he was operating and another of the appellant company's cars at the corner of Fifth and Market streets. The petition charged that the collision was due to the negligence of the motorman in charge of the Market street car. The answer was a traverse and plea of contributory negligence, and to this plea there was no reply. At the conclusion of the testimony offered for Hibbitt, counsel for the company moved the court to peremptorily instruct the jury to find for it; but this motion was overruled. Again at the conclusion of all the testimony a similar motion was made, which was also overruled. Thereupon the case was submitted to a jury and a verdict returned in favor of Hibbitt. Afterwards, in due time, the company by counsel moved for a judgment notwithstanding the verdict, and this motion was overruled. A reversal of the judgment in favor of appellee is asked upon two grounds: First, on account of the failure of the court to sustain the motion for a peremptory instruction; and, second, upon the ground that the motorman in charge of the Market street car was a fellow servant of Hibbitt.

The plea of contributory negligence is an affirmative defense. It is a charge in substance that the injury of which the plaintiff complains was caused by his own negligence and except for which it would not have happened. The Code provides, in section 126, that "every material allegation of a pleading must, for the purposes of the action, be taken as true unless specifically traversed." And so we have held in a

number of cases that unless the plea of contributory negligence is denied it must be taken as true. And taking it as true, there can not of course be a recovery, as it stands admitted that the injuries complained of were caused by the negligence of the complaining party. L. & N. R. Co. v. Paynter's Adm'r, 82 S. W. 412, 26 Ky. Law Rep. 761; Brooks v. L. & N. R. Co., 71 S. W. 507, 24 Ky. Law Rep. 1318; L. & N. R. Co. v. Mayfield, 35 S. W. 924, 18 Ky. Law Rep. 224; Mast v. Lehman, 100 Ky. 464, 38 S. W. 1056, 18 Ky. Law. Rep. 949.

It is insisted, however, that as the company introduced evidence conducing to show that Hibbitt was guilty of contributory negligence, and the jury was instructed that they could not find a verdict in favor of Hibbitt if they believed his injuries were caused by his contributory negligence, the omission in failing to reply to the plea was cured. And, further, that counsel for the company waived the right to complain after verdict of the failure to file a reply by introducing evidence upon the subject of Hibbitt's contributory neglect and asking an instruction based upon this evidence. But counsel for the company saved in the proper manner all its rights by requesting the court to direct a verdict for it upon the conclusion of the evidence for Hibbitt, and also at the conclusion of all the testimony. The motion for a peremptory instruction should have been sustained, and certainly the company ought not to suffer because of the error of the court committed over its objection and after it had done everything it could do to save its rights. This precise question was before us in Mast v. Lehman, supra, in which the petition was so fatally defective as not to entitle the plaintiff to a verdict. The court said: "At the conclusion of the trial the defend-

ant moved the court to peremptorily instruct the jury
to find for the defendant. This motion of defendant
should have been sustained by the court, and would
have been sustained if the court had been aware of
the true condition of the pleadings. It is true the
plaintiffs objected to the instruction; but in our opin-
ion such objection did not relieve the court of its ob-
ligation to properly instruct the jury as to the law
of the case based upon the pleadings and the proof.
If the court had sustained this motion, as it was clear-
ly his duty to do, it would necessarily have brought
to the attention of the plaintiffs the defense which
had been so carefully concealed from the very be-
ginning of the case. And before the submission of
the case to the jury he would have had an opportun-
ity to have offered an amendment curing the defects
in his petition, which, in furtherance of justice, it
would have been the duty of the court to have allowed
to be filed." For this error the judgment must be
reversed; but as there may be a new trial, at which
the plaintiff will be permitted to file a reply, we will
consider the question raised by counsel that these
motormen were fellow servants. If they were fellow
servants, then Hibbitt cannot recover.

The fellow-servant rule is invoked in many cases
but applied in few. This court is fully committed to
the doctrine of what is known as the "association
theory," or, in other words, that the master will not
be excused for negligence resulting in injury to one
servant which is inflicted by a fellow servant unless
the servants are so engaged and situated as that each
by carefulness and attention in the performance of
his duties may protect himself from injury caused by
the negligence of the person with whom he is work-
ing.

In L. & N. R. Co. v. Brown, 127 Ky. 732, 106 S. W. 795, 13 L. R. A. (N. S.) 1135, the court, following a long line of cases therein cited, said that: ''When the servant is injured by employes of the same master, who are not directly associated with him, and with whom he is not immediately employed, and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he cannot protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds.'' And this rule, to which we adhere, makes it plain that these motormen operating on different cars were not fellow servants. True it is they were fellow servants in the sense that they were employes of the street railway company; but in the performance of their duties they had no association with or control over each other. Each acting for himself had charge of the operation of the car upon which he was running. Neither could control the actions of the other, or protect himself from the negligence of the other. If the motorman on the Market street car negligently or carelessly ran his car into the car upon which Hibbitt was motorman, he should not be held responsible for his negligence or be denied a recovery against the master on account of it. A few courts hold in effect that when the master has furnished the servant a safe place in which to work and safe appliances to work with, and has exercised reasonable care in the employment of the servants, that his full duty is discharged, and that if

one of the servants is injured by the negligence of another. there can be no recovery; the theory being that accidents of this kind are one of the risks assumed by the servant in accepting the employment. But this doctrine has never obtained a foothold in this state. We are unable to perceive upon what sound reason the servant should be held to assume the risk or injury from other employes not immediately associated with him. Why should this risk be put upon the servant and not the master?

When the servant accepts employment, the master should be held accountable for injuries inflicted upon him by the negligence of other employes over whose movements the injured servant has no control. The imposition of this duty upon the master will not render servants more indifferent to danger or lead them into conduct they would avoid if compelled to suffer the consequences of their own acts. On the other hand, it will have a tendency to make the master more careful in the selection of his servants. Let us take this case as an illustration. The motorman on the Market street car was selected and employed by the street railway company. It had opportunity before engaging his service to ascertain his competency and afterwards to observe his capacity to safely operate a car, and had the right to discharge him at any time he failed to perform in a satisfactory manner his duties. But it is safe to say that Hibbitt did not have the right to exercise any of these privileges and was not consulted as to the fitness of the other motorman to perform the service he was engaged in. And yet we are told that as between the street car company and Hibbitt, Hibbitt must bear the burden of the other man's incompetency or negligence. There does not seem to be good reason for thus shifting responsibil-

ity to a dependent employe or for relieving the master from an obligation that as between the two should be borne by the one clothed with power and authority. If, however, the master employs servants to labor together in a common employment, and each is so situated that he may observe the acts and conduct of the other, there is more reason why the master should be exonerated, and the injured servant has little right to complain when by attention to his associates and the manner in which they conduct themselves he can save himself from their inadvertent or negligent acts. It may well be said that the servant assumes the risk of being injured by a fellow servant when he is so situated that he may by exercising care for himself and at the same time by keeping an eye on his co-laborer avoid the injury. But if the fellow-servant doctrine is extended beyond this, there is no reasonable place at which it can stop short of the complete exoneration of the master for the negligent acts of all servants who are not superior one to the other. If the servant whose employment gives him no direct association with or opportunity to protect himself from the negligence of another servant is made to suffer for the acts of that servant merely because they happen to be working in the same building or room or place or on the same train, why should not the rule be extended to embrace all other servants of the same master without reference to where they work, or whether they are engaged in the same character of work or not? The injured servant has no more opportunity to protect himself from one class than he has from the other. It is therefore illogical to say that persons who are doing identically the same kind of work for the same master, although neither has any direct association with the other, and

is not so employed as that he can protect himself from the negligence of the other are fellow servants, but that the servants who do not happen to be engaged in precisely the same field of labor are not fellow servants. The reasons that would bring them within the fellow-servant rule are as cogent in the one case as in the other, and if the doctrine is to be extended beyond the limits we have fixed it should take in the whole field of fellow servants and be applied to all employes of a common master wherever or in whatever engaged, except as to those who occupy some place or position that give them the right to superintend or control others.

In Shearman & Redfield on Negligence, section 180, et seq., Thompson on Negligence, section 4846 et seq., Bailey on Master & Servant, vol. 2, section 1795, et seq., McKinney on Fellow Servants, Labatt on Master and Servant, vol. 2, section 471 et seq., and in the notes to Murray v. S. C. Railroad Co., 36 Am. Dec. 268, and Fox v. Sanford, 67 Am. Dec. 587, numerous cases will be found illustrating the decisions of the various courts upon this subject. But there is so much confusion and conflict in the cases that it would be a difficult as well as unprofitable task to undertake to state the positions of the different courts. It would not, however, be far out of the way to say that in the various phases of the fellow-servant doctrine each court of last resort has adopted a measure or standard of liability for itself. Nearly all of them seem to recognize that it is a harsh and unreasonable rule, and yet one that is so firmly fixed in the jurisprudence of the country that it cannot well be gotten rid of except by legislation. In one case the doctrine will be applied if the servants are engaged in the same field of employment or the same department of ser-

vice, as for instance persons connected with the operation of trains on a railroad. In another, this group of employes will be again divided, and engineers and firemen placed in one class; and conductors and brakemen in another. And so it is that these attempts to apply the doctrine often result in drawing the line of nonliability at absurd places. Thus, how can it be said with propriety that a brakeman should be made to suffer for the negligence of an engineer under the fellow-servant doctrine when the brakeman has no more to do with the movements and conduct of the engineer than he has with the movements and conduct of the general freight agent? Upon what reasonable ground can it be said that a conductor of a freight train is a fellow servant of the track repairer, and so cannot recover if the latter is faithless in the performance of his duties and in consequence the train is wrecked? These and many other like instances that can be found in the cases, as well as textbooks cited, illustrate that the courts have tried to make arbitrary distinctions that, when applied to actual conditions, are entirely unreasonable as well as illogical. And it would seem that the courts holding to what is known as the "department theory" are endeavoring to break away from the principle first declared in Farwell v. Boston & W. R. Corp., 4 Metc. (Mass.) 49, 38 Am. Dec. 339, which is the leading American case on the subject, that all employes of the same master, when neither occupied the position of vice principal or representative of the master, were fellow servants in the sense we are considering, but are not prepared to abandon it altogether. We appreciate the fact that in some instances it will be difficult to apply with reasonable certainty and fairness the "association theory" that we have adopted. It

may be perplexing in many cases for the trial court to draw with accuracy the line that separates servants so associated as to exempt the master from liability for an injury to one caused by the neglect of another from those servants who do not assume the risk of injury by a fellow servant. But, at last, it is a question of fact to be settled, as are other questions of fact, by the court if the facts are admitted, and by a jury if they are in doubt. And, however troublesome its application may appear, we have no doubt that the justice and common sense of the courts will find a way to apply it to the facts of each case that will not make it less adaptable than many other rules of law that must be adjusted to conditions as they arise and be met and solved as the right and justice of the case seems to demand. We are also aware that this rule has not been approved by many courts; but we are nevertheless of the opinion that the theory upon which it rests will not suffer by comparison with the distinctions made in the "department theory" doctrine followed by many courts.

For the error indicated, the judgment is reversed.