## Rogers et al. v. Price et al.

Feb. 20, 1942.

Henson & Taylor for appellants.
King, Flournoy & Ruark for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On May 30, 1939, Price, plaintiff below, a resident of Eldorado, Illinois, selling cars for the Burnett Motor Company of the same place, was traveling north on Highway No. 56 and came into collision with a car driven

by T. F. Jarrett, an employe of the Rogers Truck Line, both residents of Texas. Jarrett was driving southwardly from Evansville, Indiana, to Shawneetown, Illinois. Price was driving northwardly from Shawneetown to Morganfield, Kentucky. Price testified that he was driving about 35 miles per hour, and on his right side of the highway. As he was rounding a curve he saw Jarrett's car at a distance of about 175 feet, traveling at a speed estimated at 60 miles; that when within about 20 feet of the car, and it appeared that Jarret was going to strike his car, he turned quickly and attempted to avoid the impending collision. He insists that at the time of the accident Jarrett was on the wrong side of the road. Price's left arm was resting on the window, and the impact tore it off.

After the collision the Price car ran for some distance down and across the left of the highway and turned over. He was unable to guide it because of the injury to his arm. His left fender and left wheel were broken down, and the left door mashed in. The 18 foot road was in good condition and had a white line down the center. The day was clear, and it is admitted there were no obstructions.

The remainder of his testimony relates to his injuries and suffering resulting from the collision, which injuries are best described by his physicians. Friends took him to Dr. Ferrell, who says his left elbow joint was torn entirely off, and the ends of the bones were crushed; mashed at the joint. He amputated his arm; afterwards the wound scabbed over, but there was and would be tenderness and soreness for several months; that the pain would be severe because the nerves were cut off; "the brain controls the nerves and he still thinks there is pain there, though the injured part is gone." The doctor was of the opinion that Price could wear an artificial member within 18 to 24 months. Other doctors testified to the same effect.

Jarrett, an employe of the Rogers Truck Line, together with Gregory, had been to Evansville and were returning to Shawneetown. He says that as he rounded the curve (he was on the inside), driving on his right side of the road, at no more than 40 miles per hour, the Price car, making about the same speed, approached and, when within about 20 feet of his car Gregory called out, "that man is going to hit us." The Price car then came

across the center of the road and his "left hand front wheel hit my left hand front wheel." He said that immediately before the impact he did not notice Price "do anything." "I was watching my side; I was not watching him very close; when he got within 20 feet it looked like he tried to swerve to the right." The impact knocked Jarrett unconscious and he remained so until he later woke up in the hospital. It was Jarrett's first trip over the road. His injuries were slight. The Rogers' car was almost completely demolished. On cross-examination Jarrett said that at about 100 feet distant he noted the Price car on its right side of the road, and that he saw Price pull over on his side about the same time Gregory called to him.

Gregory's testimony, in the main, corroborated Jarrett's. He did say that he could see the Price car when the two were "possibly" about 250 feet apart, and at this point he observed Price looking to the right toward the Buchannan home, which was near the roadside, and he did not turn his head until within 20 feet of the Jarrett car. One witness testified as to a mark in the road, observed by him the following morning. He was unable to say just where the accident occurred, and from his description of the mark, which he thought was made by a tire to which the brakes were applied, "or something dragging," it might appear that the collision occurred on Jarrett's side of the road, but the testimony is not persuasive, since the witness is assuming that the mark showed the place of contact.

Other witnesses testifying to the same facts described it likewise. Miss Toombs, with others, was on the porch of the Buchannan home, and saw the Price car pass; she says she was "not noticing particularly," but that "Mr. Price might have glanced at the house, but if he did it was nothing unusual." Another witness on the porch said, as he passed the house "he looked up toward the house, just a natural look." This witness did not note any change in the movement of the Price car, but did notice Price "jerk his car quickly to the right," shortly after it passed the house, but did not change his course. None of them say he was then on the wrong side of the road, at any time.

Price said that as he passed the house he glanced at it and saw some folks there, but kept his course on the right side. There is a pencil sketch which undertakes

to show the road, other objects and location of mark and cars after the accident, but it has been of little assistance, since witnesses in undertaking to identify certain spots, would say "about here," and "about there," without, except in one or two instances, making illustrative marks.

At this point, and before we reach technical grounds of procedure, urged as being in error, we take up the one relating to the verdict of the jury. Counsel for appellant contends that the verdict is "grossly excessive and against the overwhelming weight of the evidence, given under the influence of passion and prejudice, induced by improper argument and misconduct of counsel for appellee and by reason of erroneous instructions." The objection is severable.

As to the verdict, which was for $10,000, subject to a credit as later appears, though to be considered as one for the sum named, we cannot agree that it was excessive. Price was a man about thirty-two years of age, with a small family. He had a high school education, and it was shown that he was making over twenty-five dollars per week. He had incurred hospital and medical bills to more than $200; he lost one of his arms, and lost actual time, $183.70; his car was damaged. He still suffered much pain at the time of trial. He could still "feel the pain in the fingers on the arm that was cut off."

It is under our rules, for the jury to determine the amount of compensation by applying their knowledge and experience to the facts and circumstances. We have always been reluctant to set aside a verdict for damages, unless the award is so disproportionate as to strike us at first blush as resulting from prejudice, passion, corruption or mistake in the application of the law. Wilkins v. Hopkins, 278 Ky. 280, 128 S. W. (2d) 772, citing in support Jefferson Dry Goods Co. v. Blunk, 264 Ky. 673, 95 S. W. (2d) 244, and many others.

In the following cases we have approved sizeable verdicts for various injuries: Loss of arm and other injuries, $10,700; Louisville & N. R. R. Co. v. Cason, Ky., 116 S. W. 716. Loss of arm at elbow by man fifty-seven years old, $9,000; Price and Lucas Cider & Vinegar Co. v. Haley, 137 Ky. 305, 125 S. W. 720. $17,500 for partial loss of right hand and broken leg; Chesapeake & O. Railway Co. v. Stapleton's Guardian, 223 Ky. 154, 3 S. W.

(2d) 209. $10,000 to bus passenger for loss of leg above knee; McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 278. We cannot say that the verdict is excessive or the result of passion or prejudice.

The argument seems to be that because two witnesses testified as to the direct manner of the accident, as against one, with some circumstantial evidence on behalf of defendant, the verdict should have been for appellants. We are not prepared to say that there was not sufficient testimony to justify the finding. Price's testimony alone made a triable issue of fact. The rule is that the jury may believe one set of witnesses as against another, regardless of respective numbers. Price in his petition charged that he was injured by the negligent operation by Jarrett of Rogers' car. His prayer was for damages in the amount of $31,973.70.

Rogers and Jarrett filed answer, counterclaim and cross-petition, denying the allegations of Price's petition, charging that any injury to Price resulted from his negligence. In counterclaim against Price, and cross-petition against Burnett, it was alleged that at the time of accident Price was in the employ of and operating a car owned by, and was engaged on business for Burnett.

It was then alleged that following Price's injury he filed an application with the Illinois Industrial Commission, which body later awarded him compensation, and that the Hardware Mutual Casualty Company, insurer, paid or is paying the sum named. The prayer was for dismissal of Price's petition, and judgment against Burnett for the sum of $500 for car damage, and if Price should recover, then a credit on any judgment rendered. Jarrett's pleading was of the same tenor as Burnett's, except he asked for judgment for $35,000 over against Price and Burnett, and should judgment go against him and employer, for credit to amount paid or due Price under the compensation award.

On this pleading summons was served on the Secretary of the State of Kentucky; thereafter Burnett, entering appearance solely for the purpose, moved to quash the return. Later the Hardware Mutual Casualty Company, a Wisconsin corporation, stepped into the case, filing petition against Rogers and Jarrett. It charged that Price had been awarded compensation for the injuries received in the motor accident, which it paid; that Jar-

rett negligently operated Rogers' car causing the injury to Price, and it sought judgment against them to the amount of the award. Summons was served on the Secretary of State; Rogers and Jarrett demurred and answered in denial. At the same term of court, without having passed on demurrers or motion, by agreement of parties the actions were consolidated. Counter pleadings raised and completed issues in all branches of the case.

On October 23, 1940, Burnett renewed motion to quash the return on the summons, followed by a plea to the jurisdiction of the court, based on the ground that the petition on its face showed that Burnett Company was a non-resident; that at the time of the accident it was not the owner of the car Price was driving, and had no interest in it; that it was not the operator of the car, nor having it operated at the time of the accident; that Price worked on a commission basis, operaing his own car; had no regular schedule, and employer did not direct Price to make the trip in which he was engaged at the time of the accident. These allegations were supported by affidavits and were undenied, hence it was claimed the substituted service was not authorized by Section 12-1, Kentucky Statutes.

To the plea to the jurisdiction, demurrer and reply were filed. After issues were completed a jury was impanelled; at the close of the evidence Burnett moved for a peremptory instruction, which motion was "passed for the present." The Casualty Company moved the court to rule on the demurrer to its petition, and the court sustained the demurrer. In an amendment the Casualty Company plead that under the laws of Illinois it had, upon payment of a compensation claim, the right to be subrogated, and to sue defendant to recover loss occasioned by its payment to Price of $2,901.65. Demurrer was interposed by Rogers and Jarrett and overruled.

In the meantime the case was submitted, the court instructing the jury to, and it did find for Burnett on the counterclaim and cross-petition, and returned a verdict for $10,000 in favor of Price; judgment was entered and motion for a new trial overruled. In judgment the court directed that the amount received by Price on his compensation claim, fixed at $2,901.65 be deducted, and applied to the use and benefit of the Casualty Company.

Appellants complain that the court erred in credit-

160

,ing the judgment with the sum the insurer had paid. This argument, as we read the brief, is based on the assertion that the pleading filed by the compensation carrier did not state a cause of action; the allegations "were but conclusions," and appellants had filed demurrer and contradictory pleading. It is noted that the court did not submit the issue as between insurer and appellants, submitting only the issues as between original plaintiff and defendants.

The issue would have been the same insofar as negligence was concerned, had not the insurer plead. It is observed that issue of the payment by insurer was first injected into the case by the pleadings of appellants, who specifically alleged that Price had been awarded compensation for his injury, and if it should happen that Price obtain a judgment against either defendant it should be credited to the extent of the sum paid.

It is also noted that to insurer's first pleading demurrer was sustained. The insurer then plead, perhaps as a conclusion, its right of subrogation and demurrer was overruled. At this point it was agreed by the parties that the actions be consolidated and submitted with the issues thus formed. Counsel's contention that the pleadings of insurer were perhaps insufficient may be conceded forceful. Employer's Liability Corp. v. Webb, 283 Ky. 115, 140 S. W. 825. As the issues were submitted to the jury, and as the case developed and culminated, the action of the court in allowing the amount awarded Price, for the benefit of the insurer, affected Price alone, and he is not complaining.

It is noted that when Price was asked if he had not recovered from insurer, and the question objected to, counsel remarked that there was no dispute that "this man got $3,000 insurance compensation, which will be credited by it on any judgment, and the court will handle that," which he did by instructing the jury they were not to consider that phase of the case. This matter was "handled" in conformity with Berry v. Irwin, 224 Ky. 565, 6 S. W. (2d) 705, 706, wherein we held that "the compensation feature should play no part in the trial of the case * * * until the court came to enter the judgment on the verdict when he should apportion it between the employer and employee [here insurer] as their rights appear."

We also held that if the claimant has received compensation, the negligent third party is entitled to be credited on his liability to the injured person, but in turn is liable to the employer (insurer) for such credit.

> "Thus justice is accomplished. * * * The appellee * * * is not complaining of the apportionment, and it is immaterial to the appellants to whom the judgment is paid so long as they go acquit."

We note that the full proceedings, including award by the Illinois Commission, is in the record; it was not allowed to be read to the jury, but the bill of exceptions indicates that it was considered by the court in apportioning the judgment.

The next question relates to the ruling on motion of Burnett to quash the return on the summons, and upholding its plea to the jurisdiction of the court based on grounds above stated. Counsel for appellant contends that the court was correct in first overruling Burnett's motion and plea, but incorrect in directing verdict for Burnett at the close of the testimony. We need not discuss whether or not the court correctly ruled on the dilatory motion, the only question being whether or not under the pleadings, followed by proof, Burnett was to be subjected to a judgment. The controlling factual question presented was whether Burnett was civilly liable for the negligent acts of Price, he driving his own car, under no control of Burnett in its operation, or in control of the business in which he was engaged at the time of the accident. This question is fully answered, negatively, in Leachman v. Belknap Hardware Co., 260 Ky. 123, 84 S. W. (2d) 46; Grocers Biscuit Co. v. Hinton, 264 Ky. 739, 95 S. W. (2d) 571.

It is next argued that the court erred in refusing to allow appellants to read to the jury the proceedings and result before the Illinois Commission. We have indicated above that this was not a matter for the jury, but for the court's consideration. In a general way complaint is made of the instructions, or some of them, given by the court. It is complained that the court first gave instructions, in detail, as to the duties of Jarrett in driving his car, and when defining the duties of Price merely said that his duties were identical with those prescribed for Jarrett.

We are pointed to no authority condemning this procedure, and we are totally unable to agree with appellant that this method had the effect of confusing or misleading the jury, or that the jury, supposed to be made up of men of ordinary intelligence, did not comprehend the meaning of the instruction. It is again argued that the court should have given separate instructions on the matter of contributory negligence, instead of instructing that if the jury believed that both drivers were guilty of negligence, they should find for neither.

While it may be conceded the better practice would have been to submit the question in separate instructions, nevertheless in Comer v. Yancy, 251 Ky. 461, 65 S. W. (2d) 459, we held that a similar instruction submitted the issue of contributory negligence on the part of both parties in good form. When we look to instructions Nos. 1 and 3, as to relative duties, and the conclusion to be reached upon a belief of failure of either driver to observe such duties, the instructions were not misleading. Complaint is made of instruction No. 6, which told the jury not to consider the fact that Price had been paid compensation. We have above shown that the court correctly "handled" this matter.

The last contention is that counsel for Price, during argument, said "neither of the defendants cared enough about this case to come to the trial, and Jarrett left the court room after testifying, and that the defendants did not care what the jury did." Upon objection, without motion to discharge the jury, the court admonished counsel to "keep within the record." Counsel repeated in substance what he had said, and the court again admonished, as above, without suggestion for further admonition.

The bill of exception shows that after Jarrett had testified, counsel advised him he might go home. It is possible to infer that the statement made might be treated as a hint that defendants were protected by insurance; however Jarrett had not only shown by his testimony that he was not interested, but testified, without objection, that he made no claim until Price sued him; he went further without objection, saying when the suit was filed, "I turned that over to the insurance company and went ahead with my work," to which counsel did not make reference.

Counsel had a right to comment on the fact that

some of the parties were not present, and to the fact that Jarrett had left the court room while trial was in progress, and from the latter's proof that he was not interested in whatever verdict might be returned, hence we find nothing in the argument, which was in effect withdrawn from the consideration of the jury, to prejudice the minds of the jury. They no doubt knew that no member of the Rogers' firm was present, and that Jarrett had departed. The evil, if any, was attributing the lack of interest, but we can hardly conclude that counsel's argument was such a departure from the rules of the etiquette of practice, or made with a design to bring about a miscarriage of justice, or for sinister purpose, McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 378, as to hold it prejudicial error.

After consideration of the entire record we conclude that the court did not commit any error prejudicial to the rights of appellants.

Judgment affirmed.