# Powell v. Commercial Standard Ins. Co. et al.

April 20, 1943.

8

Woodward, Dawson & Hobson for appellant.

C. E. Rankin, Ernest G. Baxter, William Lewis and Chenault Huguely for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant was plaintiff below; appellees, defendants, were the Insurance Company, Finley Gibson, and Dan Gabbard. In petition plaintiff alleged that he was employed by the Company and Gibson its counsel, in the adjustment of claims, and investigation in pending suits, which employment also required him to file legal papers in various parts of Kentucky. That for his services Gibson paid him, the Company paying expenses based on mileage traveled. Plaintiff asserted that on May 7, 1941, in the late afternoon or evening, Gibson gave him papers to be served or filed in the eastern part of the State, so it was necessary "to drive the whole night of May 7." For this purpose he arranged for his uncle Nicholas Powell to take the trip with him, "to drive the car while plaintiff was taking some rest and sleep"; that Nicholas Powell made the trip with the acquiescence of defendants (except Gabbard).

According to instructions he took the papers, and while the uncle was driving and he, appellant, riding on the rear seat and sleeping, the car collided with a truck driven by Gabbard. It was charged that the collision was caused by the concurrent negligence of Gabbard and Nicholas Powell. That as a result he was severely injured and permanently disabled. He sought damages against the three defendants for his expenditures and injury.

Gabbard denied and pleaded Powell's negligence, and in counterclaim asked damages for injury to and the loss of the use of his truck. The Insurance Company and Gibson answered, denying and pleading contributory negligence. When the case was called a jury was empaneled; at the close of plaintiff's evidence, on defendants' motions, the court instructed the jury to, and it found for each defendant. Error in thus ruling is the ground upon which reversal is urged; it is conceded that "peremptory instruction was properly granted in favor of the Insurance Company."

It is argued that proof made a submittable case as to Gibson, since it was his duty to furnish, and he had furnished, Powell help to perform his tasks; that the emergency existing authorized employment of Powell to drive the car in the service of Gibson on this occasion.

It is argued that Powell and plaintiff were common servants of Gibson (but not fellow servants), distinguishing the fellow servant doctrine upon the principle laid down in Louisville R. Co. v. Hibbitt, 139 Ky. 43, 129 S. W. 319, 320, 139 Am. St. Rep. 464; Louisville & N. R. Co. v. Brown, 127 Ky. 732, 106 S. W. 796, 13 L. R. A., N. S., 1135; R. C. Tway Mining Co. v. Tyree, 183 Ky. 248, 208 S. W. 817.

There is no doubt but that plaintiff was severely injured by the collision; he lost the use of his right leg. The driver of the car was instantly killed. Appellant, a young man about twenty-two years of age, was a law student. At the time of the accident he was employed by Gibson as above stated, for which Gibson paid him a weekly salary and in addition expenses, including five cents per mile for the use of an automobile.

There is some discussion as to whether the car was the property of plaintiff or his brother. The proof showed title was placed in the older brother, but the court properly concluded that plaintiff was the owner. It is undisputed that on the morning of May 7, 1941, plaintiff had in his hands certain papers theretofore prepared by Gibson for attention on the following day, and that plaintiff conceived that it was necessary for him to drive all night in order to perform his task. He arranged for his uncle to drive a portion of the night so that he would be rested in the morning and able to perform his duties. It is in proof that prior to the accident plaintiff while driving at night had fallen asleep and had narrowly escaped an accident. When Gibson was informed of the fact he said: "You ought to take some one with you." Plaintiff suggested to Gibson that his uncle had done some investigation work and could be of assistance to him. It seems that the work contemplated was chiefly in making investigations, rather than driving a car. Gibson would ordinarily advance expense money; appellant would cover the uncle's expenses in his report to Gibson.

On May 7 Gibson was ill and not in his office; he had theretofore directed appellant to go to London to

look after a pending claim, and to stop at intervening points to look after "other jobs." Plaintiff told Gibson that he was out of funds; Gibson could not come to the office to supply him and plaintiff said that he would get the necessary funds elsewhere, and Gibson said that he would reimburse him. Plaintiff was impressed that the most important matters required attention at London. His adopted plan was to go to London, the most distant point, get there early in the morning and attend to the other matters on his return trip. Getting his final instructions from Gibson's secretary, he left the office around noon. He made efforts to obtain expense money, but failed until about nine o'clock in the evening, and thereafter left Louisville for London.

Appellant drove the car until they reached Danville around 2:30 a. m., when his uncle relieved him, intending to drive to London. He went into detail as to his employment by Gibson, and on his version of his and his uncle's relationship with Gibson, on which hinge the question of the latter's liability. He related circumstances which showed that his original plan was to start earlier in the day, but due to lack of funds he was delayed. Appellant was to furnish the car and gasoline, though he sometimes used Gibson's courtesy card, the payments for gasoline being adjusted in settlements.

We come now to the meager details of the accident, concerning which little testimony of probative value is shown, except by Gabbard. The accident occurred about 3:30 a. m. of the 8th, four and one-half miles from Stanford. It is difficult to give a fair description of the road at and near the place of accident. It seems there were two small bridges at points near the place where the cars collided. Mr. Matheny, who lived about a half mile distant, was awakened by some one coming to his home, apprising him of the collision. He went to the place and found three persons other than the occupants of the truck and the car, none of whom testified. He first came upon the truck between the bridge and his house, parked on the right side of the road "coming toward Stanford, and on beyond the bridge going toward Crab Orchard, the car was off to the right side of the road going in that direction; the car had gone over the rock fence backwards." He went home, called the hospital, then went back to the scene. He, and those who had gathered there, were "trying to figure out just how the car got.

into the shape it was.'' He fixed the point of a mark which he thought was made when the impact came, about 10 feet east of the bridge toward Crab Orchard. This looked to him like it was made by some blunt instrument which had struck in the middle of the highway, about the width of a tire, on the left of the center line, going toward Stanford. He said that then there were marks from the car that skidded up the road about 40 steps. He could not tell whether or not the marks were made by the car on the left side of the road, ''after the impact; evidently that happened whenever the impact came and I don't know where that was exactly.'' He did say that starting from the ''marks made by the blunt instrument'' point, the truck went through the bridge and for some distance on the left side of the road, and coal was spilled on that side. He saw no marks on either side of the bridge indicative of a sudden application of brakes. Gabbard explains how his truck got to the left side; he never claimed any sudden application of his brakes.

Another witness, who went from Gibson's office, reaching the scene four hours after the accident, undertook to explain what marks he observed, and give conclusions as to how the blunt instrument marks were made. The court properly did not consider this evidence, because it was not shown that conditions were the same as when the accident occurred.

It is evident that up to this point, the effort was to fasten the negligence, if any, on Gabbard. The proof fails, even without Gabbard's testimony, because it would be impossible to tell from proof of marks how the collision occurred. It was wholly insufficient to take the case to the jury. Potter v. Consolidated Coal Co., 276 Ky. 404, 124 S. W. (2d) 68; Union Underwear Co. v. Barnett, 285 Ky. 488, 148 S. W. (2d) 339.

Apparently, in order to establish the negligence of the driver of the car, appellant introduced Gabbard. It would serve no useful purpose to give his evidence in detail. It is sufficient to say that his testimony placed upon the driver of the Powell car negligent operation, unless it be conceived as argued that when he saw the Powell car on a straightaway at a distance of one-half mile, approaching a bridge at a rapid rate, it was his duty to stop until the Powell car had cleared the bridge.

12

This brings us to the point urged, that the negligence of Powell should not defeat a recovery by plaintiff as against Gibson. It is first contended that there was such an emergency existing as gave plaintiff authority to employ his uncle to drive for him, relying upon Baringer v. Zachery, 206 Ky. 229, 267 S. W. 182; Auto Livery Co. v. Stone, 237 Ky. 686, 36 S. W. (2d) 349; Standard Oil Co. v. Adams, 271 Ky. 221, 111 S. W. (2d) 668. These cases hold the rule to be that when the facts show the necessity of employment of temporary help in cases of emergency, and the helper is injured, even though the employer was ignorant of the employment, he is nevertheless liable. In the Standard Oil case, supra, we pointed out that the emergency contemplated must be a sudden, unexpected one; such as in a case where the servant cannot perform his task without immediate assistance. Example is to be found in the Baringer case, where a wagon was mired and the teamster was unable to move it; an unforeseen contingency which gave rise to a calling for temporary help. There was no such emergency here, even giving plaintiff's proof the widest latitude. His injury was the result of his election to make the trip at the time and in the manner which he himself planned.

The proof shows that he might have started from Louisville about daylight and fulfilled his London engagement. He could have taken a train in Louisville which would have permitted him to reach London in time for his engagement there. He admits that he could have stopped in Harrodsburg or Danville for the remainder of the night and met his engagement in ample time; he did not do so on account of the extra hotel expense. This was a matter like the employment of his uncle, one of his own conclusion. Mandala v. Wells, 212 App. Div. N. Y., 370, 209 N. Y. S. 35. We have also held it not to be sufficient to fasten liability on the master for injury, merely where emergency was thought to exist; it must in fact exist. Central Ky. Traction Co. v. Miller, 147 Ky. 110, 143 S. W. 750, 40 L. R. A., N. S., 1184; R. C. L. 850.

Counsel contend, though they should be in error on the emergency theory, that since Gibson had authorized the employment of Powell, plaintiff should recover because the proof shows that he and Powell were servants of Gibson, and this being true established the relationship in such a way as to forbid the application of the

fellow servant rule. The distinction is based on what is known as the "association theory," discussed in Louisville R. Co. v. Hibbitt, 139 Ky. 43, 129 S. W. 319, 320, 139 Am. St. Rep. 464.

> "The master will not be excused for negligence resulting in injury to one servant which is inflicted by a fellow servant unless the servants are so engaged and situated as that each by carefulness and attention in the performance of his duties may protect himself from injury caused by the negligence of the person with whom he is working."

There it was shown that one motorman was injured by the negligence of another operating a colliding car. Like situations appeared in Harris v. Rex Coal Co., 177 Ky. 630, 197 S. W. 1075; R. C. Tway Mining Co. v. Tyree, 183 Ky. 248, 208 S. W. 817. Here appellant was in the car, the driving of which he entrusted to his uncle, and then proceeded to sleep, matters over which Gibson had no sort of control. We have been referred to no case, nor have we found one which would justify us in applying the association theory. The fact is that what may be termed dictum in the Hibbitt case, supra, may be applied as the correct rule here, basing it on appellant's proof.

> "If, however, the master employs servants to labor together in a common employment, and each is so situated, that he may observe the acts and conduct of the other, there is more reason why the master should be exonerated, and the injured servant has little right to complain when by attention to his associates and the manner in which they conduct themselves he can save himself from their inadvertent or negligent acts."

Viewing the plaintiff's proof in the strongest light, it does not appear that he claimed that the uncle was to drive while he slept, but only to "relieve" him. Giving appellant's proof the most liberal application, admitting for the sake of argument that the uncle was employed by Gibson, we are convinced that he occupied the position of fellow servant, though we express great doubt as to whether or not, under appellant's proof in respect of employment of the uncle, it was such as to constitute him his servant so as to fix liability upon him.

We say this because appellant made it appear that

his employment of the uncle was to aid in investigation, and that it was agreed between them that "when one of us got tired the other drove"; that the uncle only drove when plaintiff was tired, "and I asked him to"; the uncle only drove with his consent and under his direction.

Furthermore, we are convinced that appellant was, as to the manner and method of serving his master, independent of control by Gibson. Plaintiff paid his expenses; whenever the uncle was engaged his expenses were also covered into appellant's statements, and as far as the record shows Gibson never knew of any such payments. There is no proof that Gibson required him to have or use a car, though it was the most convenient way of performing his tasks. Plaintiff selected the times of use. He bought the gasoline, though it went on his expense account, and in this instance selected his own time for making the trip. He employed the uncle and controlled his activities.

Under the proof we are convinced that there was no relationship of master and servant as between Gibson and the uncle; that the independent acts of appellant did not make Gibson liable for his injury. This conclusion is fortified by our opinions in Leachman v. Belknap H'dw Co., 260 Ky. 123, 84 S. W. (2d) 46; Grocers Biscuit Co. v. Hinton, 264 Ky. 739, 95 S. W. (2d) 571; Rogers v. Price, 290 Ky. 153, 160 S. W. (2d) 371; Pfiester's Adm'r v. Jones, 291 Ky. 151, 163 S. W. (2d) 304.

On the whole case we are of the opinion that the proof adduced was insufficient to fix liability, either on Gabbard or Gibson, and the chancellor correctly instructed the jury to so find.

Judgment affirmed.