## Kentucky Utilities Co. v. Carter.

Nov. 30, 1943.

Ogden, Galphin, Tarrant & Street, and Marshall P. Eldred for appellant.

J. Gordon Lisanby and R. W. Lisanby for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant, under a deed of easement, had erected its power lines across Carter's 250-acre farm. By his petition and amendments Carter sought to recover of appellant $1,269.63 for destruction of property by fire occurring on September 22, 1939. He made defendants, appellant company, and B. C. and L. L. Trover, alleging that they, through their employees, had started a fire on the right of way at some point where it crossed his farm, "for the purpose of burning out and destroying a nest of yellow jackets on its right of way, * * * and through their joint negligence, and the negligence of their employees," permitted it to spread over 122 acres, causing the destruction of valuable timber and damages to other timber and his land.

It is argued by appellant that the pleadings did not allege that either of the Trovers was an employee or servant of the company, chiefly to demonstrate that appellee did not consider the Trovers employees of appellant. Technically this may be correct, and the way the case proceeded would lend color to the theory. However, a discussion of the niceties of pleading does not seem necessary in order to reach a determination of the only question of law presented on appeal; moreover, it appears that if there was defect in pleading such was cured by answers of defendants. The two Trovers answered by traversing. Affirmatively they go into detail of proof to show efforts to extinguish the fire, and minimizing the damage to a hay stack, which it developed belonged to a tenant, and which was settled satisfactorily by the Trover Brothers. In their answer it was admitted that B. C. Trover started the fire to burn out the yellow jacket nest. They plead contributory negligence.

The Company, traversing in answer, alleged that at the time of the fire neither of the Trovers was an employee, and that B. C., who had started the fire, had no relationship with appellant, but was an employee of L. L. Trover, an independent contractor. A reply asserting lack of information sufficient to form a belief on the subject denied contractual relations with "the Trovers." Carter later filed an amended petition in which he set up his deed of easement to the company executed in 1936, and plead that under that instrument

appellant bound itself to save plaintiffs from all loss, injury or damage he might suffer by reason of the construction, maintenance, operation and inspection of its power line, except that the company should not be liable "for any damage done in cutting or trimming trees in the manner or to the extent hereinabove specified."

The manner and extent related to the removal of trees directly under wires, or such that in falling might interfere with or come in contact with transmission wires. The Company agreed that the easement deed so provided, and naturally seized upon the terms quoted as further escape from liability, a matter which, as it will develop needs no discussion. Issue was joined by replicative pleading, and under proof and necessarily complicated instructions, the jury found for appellee damages in the sum of $750 against appellant only.

The case comes to us with commitment on the part of appellant that the only question we are to consider is the alleged error of the court in denying appellant's motions, made at the closing of plaintiffs, and all evidence, for a favorable directed verdict. This naturally was based on the argument that the negligence, if any was shown, was primarily that of B. C. Trover, who admittedly started the fire to burn out the nest of yellow jackets which impeded progress of clearing work; that B. C. was an employee of L. L. Trover, and the latter was an independent contractor.

The proof, insofar as it relates to the controversial question, may be briefly stated. Hardesty was at the time of the fire in charge of maintenance of the company's lines in a named district, which included the portion running through Carter's farm. He testified substantially that he had in August 1939 made an oral agreement with L. L. Trover for the clearing of a portion of the Company's right of way. Trover was to be paid at the rate of $20 per mile, and was to furnish necessary tools, labor and transportation of laborers; there was no certain time for payment, but at intervals Trover would render account; inspection would be made to determine if the work had been satisfactorily done, and payments made. Trover controlled his employees, fixed their hours of work, and had control of the cleaning operation. L. L. Trover testified to substantially the same facts, and B. C. said his brother had the con-

tract and he, and two or three other men were working for him.

It developed in the examination of Hardesty that the oral contract had been reduced to writing, and at the insistence of appellee was brought to the attention of the jury, apparently as a matter of evidence. The contract is in the record, and as we read the paper it clearly manifests a contract, rather than employment. It shows that Trover contracted to clear appellant's line of right of way in the Earlington and Princeton district, in accordance with specifications of the company. The payment was fixed on a per mileage basis, to be made within fifteen days after completion of the work.

Counsel looks upon the written contract with suspicion, and charges appellant's counsel with "first suspicion," because not introduced by appellant. It does appear that the testimony of Hardesty and Trover go more into details as to authority, terms and specifications than does the writing, but there was no undertaking to impeach the testimony of either; all the testimony as to oral agreement was in the main without objection or exception. It developed that the writing was signed by Trover after the fire. This is explained by Hardesty, who says that at the time of agreement with L. L. Trover he had no blank forms. Aside from this, appellee appears to disregard the writing, saying that it was unenforceable, because not signed by the first party. If this be correct, the writing would be no more than a memorandum. Appellant does not rely upon the liability saving clause in the writing.

There is no doubt, whether the conclusion be based on the writing or the testimony as to oral agreement, or what "was done under the agreement," but that L. L. Trover was an independent contractor, and that the negligence charged was that of his employee B. C. Trover. Counsel for appellant in order to place liability on the company does so chiefly on some statements of Hardesty. In referring to the contract Hardesty was asked if he had the right to discharge Trover under the agreement he had with him, "for the kind of work he was doing, and he answered 'yes, sir, that is right.'" He was then asked whether he had the right to discharge Trover, whether his work was satisfactory or not, and he replied that he did not know whether he had the right

to discharge him if his work was satisfactory. On redirect examination he said definitely that so long as Trover's work was satisfactory and performed according to contract he had no right to terminate it.

We shall not analyze these questions and answers for the purpose of attempting to show that the questions had double or uncertain meaning; whether the "kind of work he was doing" referred to cleaning the right of way, or in doing the work in an unsatisfactory manner. This was on behalf of the company, and it might have depended upon the authority conferred upon Hardesty, whether he had the power to discharge Trover in event the work was satisfactory or unsatisfactory. The contract as written said nothing about termination, nor is it shown by proof that the oral agreement contemplated more than that payment would be made after acceptance of the work following inspection. Since this is true, all the conclusions expressed by Hardesty were no more than his opinion as to his construction of the contract, which was a matter of law.

This passage of words threw little light on the disputed question as to whether Trover was an employee or independent contractor. No less so than the contention that Hardesty had called Trover and told him to "take care of the fire," as the question was put to him, and which he admitted. He said that one Gregory had reported the fire to him, and he had called Trover to go and see about the fire, because it was "on his contract; the work he was doing on the contract," he no doubt having in his mind the protection of the property of both appellant and his employee.

In the face of the written, and the unchallenged verbal contract, it is difficult to see how this direction to Trover would change his status from independent contractor to that of employee or servant. It is hardly necessary to point to the authorities, other than those relied upon by appellant which go to manifest that under the facts disclosed there existed between company and Trover the relation of independent contractor. Those mentioned among others, all of which are pertinent, are Louisville & N. R. Co. v. Newland, 176 Ky. 166, 195 S. W. 415; American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Leachman v. Belknap Hdw. & Mfg. Co., 260 Ky. 123, 84 S. W. 46. To these may be added the more recent

cases of Rogers v. Price, 290 Ky. 153, 160 S. W. (2d) 371; Pfiester's Adm'r v. Jones, 291 Ky. 151, 163 S. W. (2d) 304, which, with others of like import are cited with approval in Powell v. Commercial Standard Ins. Co. et al., 294 Ky. 7, 170 S. W. (2d) 857.

Counsel cites only one case which it is insisted would take this out of the class of cases, supra, all depending on facts and circumstances peculiar to each case, wherein we have held that the facts showed employment rather than independent contract. The case is Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S. W. (2d) 1014. A reference to the opinion shows citation of cases, wherein we have on proof held employment rather than independent contract. If the facts presented here were similar, we would naturally follow that and cited supporting cases, but they are not. In fact, we referred to the Bowen case in the recent case of Johnson v. Byrne & Speed Coal Corporation, 271 Ky. 216, 111 S. W. (2d) 671, which under facts is applicable, and said: "The opinion in the Bowen case expressly stated that 'the Gradison Construction Company directed the loading, unloading and operation of the truck.'" We also there distinguished other cases of like import as the Bowen case, which may be noted by casual reference. It is a true rule, as contended by counsel for appellee, and, as we said in Levi v. Gozenbach, 236 Ky. 586, 33 S. W. (2d) 657, "if the testimony for a party and the inferences arising therefrom, tend to support his cause of action or defense, the question must be submitted to the jury." However, a close analysis of the testimony, relied upon by appellee to fix the negligence here charged upon appellant, is not sufficient for the purpose; nor did it create a sufficient inference or presumption to justify submission. It did not attain the quality of a scintilla, and it is now well known that the scintilla rule is no longer in effect in this jurisdiction.

Counsel makes suggestion that in case there be a remand for new trial, we should now indorse instruction No. 1, as offered by appellee and refused by the court, and which "appellee may submit on retrial." Our conclusions reached, and the result of the trial had, will no doubt alter, and perhaps so clarify the situation, that we are not inclined to direct the court as to instructions which should or should not be given.

Judgment is reversed with directions to grant appellant a new trial, and if the proof adduced be the same, or not of more substantial strength, motion for directed verdict should be sustained.