RENDERED: DECEMBER 15, 2016
TO BE PUBLISHED

## Supreme Court of Kentucky

2015-SC-000679-DGE

FINAL

DATE 1/5/17 Kim Redmon, DC

ELMER RIEHLE     APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.     CASE NO. 2014-CA-000372-MR
BOONE CIRCUIT COURT NO. 13-CI-01335

CAROLYN RIEHLE     APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**AFFIRMING**

Elmer Riehle wants a divorce from his wife.

He and Carolyn have been married over 30 years. He is now over 88 years of age. Carolyn is now approximately 72. After a jury trial in 2008, Elmer was declared incompetent in the Boone District Court. Carolyn was appointed as his guardian and conservator.

An aborted attempt was made the following year to have the disability removed. That effort was abandoned when he was diagnosed with Frontal Lobe Dementia.

Again in 2010, Elmer made an effort to remove the guardianship. Following a second jury trial, he was once again declared incompetent. And, once again, Carolyn was reappointed as his guardian.

Elmer grew frustrated and agitated with Carolyn having control over his assets and filed a petition for dissolution of marriage, individually and in his own right. Carolyn filed a responsive pleading strenuously objecting to the divorce and citing Elmer's profligate wasting of marital assets by engaging in reckless and ill advised "get rich" schemes so radically off the charts as to prove his mental incompetence.

The trial court dismissed Elmer's petition for dissolution of marriage on the basis that in Kentucky a person who has been declared incompetent cannot bring a legal action in this state. The Court of Appeals affirmed the dismissal. Both lower courts relied exclusively on the 1943 case of *Johnson v. Johnson,* 294 Ky. 77, 170 S.W.2d 889 (1943).

Elmer now asks this court to reverse the Court of Appeals as well as the *Johnson* decision of over 60 years ago.

The issue of whether a case should have been dismissed for failure to state a claim raises a question of law and is reviewed *de novo. Fox v. Grayson,* 317 S.W.3d 1 (Ky. 2010).

We affirm both the trial court dismissal and affirmation by the Court of Appeals. However, we reach this result on different grounds. The dismissal by the trial court as well as the decision of the Court of Appeals rely solely on the *Johnson* case. However, we hold that independent of that decision, the case is procedurally flawed.

Civil Rule 17.03(1) requires that "[a]ctions involving unmarried infants or persons of unsound mind shall be brought by the party's guardian or

2

committee . . . ." This rule is steeped in our common law and is based on studied experience. *See generally Howard v. Howard,* 9 S.W. 411 (Ky. 1888) (providing an exhaustive history); *see Miller v. Cabell,* 81 Ky. 178 (Ky. 1883). Indeed, the codification of this rule can be traced back as far as 1876 in Section 35 and 36 of the Civil Code of Practice, the precursor of the Kentucky Rules of Civil Procedure. In 1953, our predecessor Court adopted Section 35 and 36 into what is now Civil Rule 17.03.

"Unsound mind," as used in CR 17.03(1), simply means that a person has been so adjudicated, a requirement the lower courts fulfilled on two occasions. *Straney v. Straney,* 481 S.W.2d 292 (Ky. 1972).

Unlike *Johnson,* this action was not brought by the guardian. It was brought by the judicially declared incompetent in his own name.

The Appellee erroneously raises this issue through a standing argument, claiming that CR 17.03(1) clearly bars the Appellant from bringing this action in his own name.

We have defined standing as "a requirement that a party have a judicially recognizable interest in the subject matter of the suit." *Harrison v. Leach,* 323 S.W.3d 702, 705 (Ky. 2010). In more understandable terms, a person usually has standing if that party has a substantial interest in the subject matter of the litigation and they will be aggrieved by an adverse ruling by the court. *Rose v. Council for Better Education, Inc.,* 790 S.W.2d 186, 202 (Ky. 1989).

Appellant obviously has an interest in pursuing a divorce. Therefore, "standing" is not the issue in this case. The Appellee was entitled to have the

3

action dismissed simply because existing law does not allow the Appellant to bring this action in his own name.

The trial court dismissed the case because of the 1943 case of *Johnson,* 294 Ky. 77, 170 S.W2d 889. That case held that a petition for divorce is such a personal matter that a guardian cannot maintain that action on behalf of the ward. That question, no matter how much attention the parties and courts below have given it, is not before us. The guardian is not bringing this action as required by CR 17.03(1). All the pleading and argument to the contrary, there is not a *Johnson* issue in this case.

We recognize the bar of the Civil Rule presents a peculiar conundrum for the Appellant. He is suing his guardian in her individual capacity for a result to which she objects. His guardian is not going to file on his behalf asking for the same relief against herself.

We believe, however, that this dilemma is clearly and exclusively within the purview of our legislature and rule making process.

## Conclusion

For all the above stated reasons, the result of the Court of Appeals' opinion is AFFIRMED.

All sitting. Minton, C.J.; Keller, and Venters, JJ., concur. Wright, J., concurs by separate opinion in which Hughes and Noble, JJ., join.

WRIGHT, J., CONCURRING: I agree with the majority insofar as it holds that Appellant, as a disabled person, may not file the divorce action on behalf of himself. However, I would go further and overrule *Johnson.*

4

I believe that if Appellant returns to district court seeking a guardian for the divorce action, and the district court finds that Appellant is still under a disability requiring a guardian, it should, in the least, appoint a limited guardian for the divorce action (as his current guardian's interests conflict with his own insofar as the divorce). The newly-appointed guardian would then have the responsibility to determine Appellant's best interests—keeping in mind that, if Appellant is still disabled, he will not by virtue of the divorce regain the ability to make financial decisions for himself. In making this determination, the guardian must keep in mind the uniquely personal and emotional nature of a divorce action. It may be the case that even if it would seem in other ways to be in Appellant's best interests that he stay married to Carolyn, that it is not in the best interests of his emotional health.

The guardian must carefully weight Appellant's personal dignity and the unique nature of the dispute in making the best interests determination. Disabled persons are still, first and foremost, persons. They deserve the same basic human dignity and respect the rest of us enjoy. That dignity must include the ability to leave an irretrievably broken marriage—just as anyone else could. If the guardian decides the divorce action is, in fact, in Appellant's best interests, I believe that guardian should then be able to properly file the divorce petition on Appellant's behalf in the family court. However, because this procedure was not followed, I concur with the majority's result. As a disabled person, Appellant simply could not file the suit on his own behalf.

Shifting my attention to *Johnson*, 294 Ky. 77, I note that case was decided more than seventy years ago at a time when no-fault divorce was not the law of the Commonwealth. After holding that guardians could not bring a divorce action on behalf of a disabled individual, the *Johnson* Court noted: "It may be that in some cases a hardship will be worked by the conclusion we have reached—such may be the case here—but stability of the marriage relation is a matter of public concern and, in the absence of specific legislative declaration to the contrary, its continuance or dissolution should not be dependent on the pleasure or discretion of a legal representative." *Id.* The law surrounding divorce was entirely different in 1943, as was the public concern surrounding "the stability of the marriage relation." *Id.* Not only have our statutes changed, but our world has changed as well. More than seventy years later, I no longer see the public's concern in the stability of marriage as trumping the best interests of a disabled individual.

My reasoning behind this change becomes clear when you look to the recent Court of Appeals case of *Brockman ex rel. Jennings v. Young*, No. 2010-CA-001354-MR, 2011 WL 5419713 (Ky. Ct. App. Nov. 10, 2011). In *Brockman*, just such a hardship as hypothesized by the *Johnson* Court came to fruition. When Brockman and Young married, Brockman suffered from Alzheimer's disease. A year after the couple exchanged their vows, the Cabinet for Health and Family Services opened an investigation into Young's possible financial exploitation of Brockman. Following this investigation, Brockman's daughters filed a petition in district court to determine whether a guardian should be

appointed for their mother. Initially, the court appointed Young as Brockman's guardian. However, two years later, Brockman's daughters filed a motion to remove Young as guardian after he stopped making payments to the nursing facility where their mother resided. Young voluntarily relinquished his guardianship and the trial court named Brockman's daughters as her co-guardians.

The next year, Brockman, by and through her co-guardians, filed a motion for dissolution of her marriage to Young. Young filed a motion to dismiss, claiming that Brockman's guardians lacked the legal authority to file for divorce on Brockman's behalf. The trial court granted the motion to dismiss and the Court of Appeals affirmed, albeit reluctantly, stating: While we must conclude that the trial court properly found that *Johnson* controls the matter herein, we agree with Brockman that modern developments in the law have begun to erode the underpinnings of this rule. We believe that the liberalization of divorce law with the creation of no-fault divorce as well as the expansion of guardianship powers certainly call in to question the viability of the holding in *Johnson*. *Brockman*, at *4. However, in spite of its strong language, the Court of Appeals acknowledged its inability to overrule *Johnson*. This Court, however, possesses the power to overrule *Johnson*—and I would exercise that power and do so now.

As this Court held in *DeGrella By & Through Parrent v. Elston*, 858 S.W.2d 698, 704 (Ky. 1993), "[w]e view the statutes related to 'Guardianship and Conservatorship for Disabled Persons,' KRS 387.500 et seq., as remedial

7

rather than exclusive. These statutes intend to provide services for incompetent persons not only as specifically articulated but also as reasonably inferable from the nature of the powers of a guardian . . . ." This Court has also held that "[t]he right to act for the incompetent in all cases has become recognized in this country as the doctrine of substituted judgment and is broad enough not only to cover property but also to cover all matters touching on the well-being of the ward." *Strunk v. Strunk*, 445 S.W.2d 145, 148 (Ky. 1969).

Therefore, I do not view the fact that the guardianship statutes do not specifically delineate the power to file a divorce action on behalf of a disabled person as one of the guardian's enumerated powers as fatal. In fact, our statutes make it clear that "'[g]uardian' means any individual, agency, or corporation appointed by the court to have full care, custody, and control of a disabled person and to manage his financial resources." KRS § 387.510(c). To read the phrase "full care, custody, and control" to include the ability to institute divorce proceedings on behalf of the ward is not a stretch.

Hughes and Noble, JJ., join.


COUNSEL FOR APPELLANT:

Steven Joseph Megerle


COUNSEL FOR APPELLEE:

Michael Taylor McKinney